**Doris Ann WINKLER; Eldon Haskell, Plaintiffs–Appellants,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant–Appellee.**

No. 89–56248.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 14, 1991 *.

Memorandum March 11, 1991.

Order and Opinion April 17, 1991.

**1.** The Family Farmers Bankruptcy Act of 1986, or Chapter 12, became effective October 27, 1986.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Charles D. Willey, Santa Barbara, Cal., for plaintiffs-appellants.

David E. Reynolds, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for defendant-appellee.

Before FERGUSON, HALL and RYMER, Circuit Judges.

### ORDER

The memorandum disposition filed March 11, 1991, is redesignated as a per curiam opinion per the attached Opinion.

### OPINION

PER CURIAM:

Doris Ann Winkler and Eldon Haskell ("appellants") appeal the entry of summary judgment in favor of National Union Fire Insurance Company ("National Union") in a lawsuit arising from National Union's denial of coverage under a directors and officers liability policy issued to Pea–Soup Andersen's–Buellton, Inc. ("Pea–Soup"). The district court had jurisdiction pursuant to

28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## I

The policy in dispute was in effect between April 27, 1981 and April 27, 1984. It insured Pea Soup's officers and directors from "loss arising from any claim or claims which are first made during the policy period." Appellants were directors of Pea Soup during the policy period. Neither served as an officer. On September 26, 1983, the directors of the company were informed that the corporation was overdrawn by $3.2 million and that sale of some or all of the corporation's assets might be necessary to avoid insolvency. On October 11, 1983, members of Pea Soup's management met with the corporation's shareholders to inform them of the overdraft. Also present were Valerie Fisher and Malcolm Evans ("the heirs"), who stood to inherit a controlling interest in Pea Soup. After learning that the value of their inheritance had been jeopardized by the overdraft, the heirs announced their intention "to take whatever legal action necessary to recoup their supposed losses." Neither the overdraft nor the heirs' threatened legal action was reported to National Union during the policy period. National Union was not notified of these developments until July 13, 1984, shortly after the heirs filed suit against certain Pea Soup directors. It denied coverage, stating that no claim was made against appellants while the policy was in effect.

## II

■ Appellants argue that coverage was improperly denied because the heirs' threatened legal action was a "claim" made against them during the policy period. We disagree.[1]

■ "Claim" is not defined in the policy. We assess its meaning, however, in light of the overall structure of the policy and its specific provisions. *See Hoyt v. St. Paul*

*Fire & Marine Ins. Co.*, 607 F.2d 864, 867 (9th Cir.1979) (claim clause interpreted by reference to notice clause); *see also California Union Ins. Co. v. American Diversified Sav. Bank*, 914 F.2d 1271, 1277 (9th Cir.1990) ("Thus, California courts would not hold that a claims-made policy is inherently ambiguous, but rather that the term must be interpreted as any other contract term."); *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912, 718 P.2d 920, 928, 226 Cal.Rptr. 558, 566 (1986) ("An insurance policy, like any other contract, must be construed in its entirety, with each clause lending meaning to the other.") (citation omitted).

Section 7(b) provides coverage for "claims" made against the insured during the policy period, so long as the insured notified the insurer "as soon as practicable in writing." It is under this provision that appellants seek coverage. In addition, section 7(c) provides coverage when the insured receives "written or oral notice from any third party that it is the intention of such third party to hold the Directors or Officers responsible for the results" of wrongful acts, or learns of "any occurrence which may subsequently give rise to a claim being made against the Directors and Officers," so long as the insured notified the insurer while the policy was still in effect.

■ Because the policy draws a distinction between claims actually made and those that are merely threatened, the latter cannot possibly be construed as a "claim." " '[N]otice that it is [someone's] intention to hold the insureds responsible for a Wrongful Act' is an event commonly antecedent to and *different in kind from* a 'claim.' " *Bensalem Township v. Western World Insurance Co.*, 609 F.Supp. 1343, 1348 (E.D.Pa.1985) (emphasis in original). Given the definition of "claim" in section 7(b), section 7(c) "would be needless if a notice of intention to hold the policyholder responsible was the same as a 'claim.' " *Auto. Ins. Co. v. Khoe*, 884 F.2d 401, 405 (9th Cir.1989).

---

1. In this diversity case, we apply California's substantive insurance law. *State Farm Mut.*

*Id.*[2]

■ Turning to the events in this case, it is clear to us that no "claim" was made against appellants during the policy period. The October 11, 1983 meeting was "an occurrence which may subsequently give rise to a claim being made against the Directors or Officers," while the heirs' declarations might well constitute "oral notice from any third party that it is the intention of such third party to hold the Insureds liable." Under the express terms of the policy, these were not "claims" but potential liabilities for which appellants were entitled to coverage if, and only if, they notified National Union of their occurrence during the policy period.

■ Appellants had a clear right under the policy to seek coverage for these inchoate claims. Having failed to do so, they should not now be allowed to recharacterize them as actual claims made while the policy was in effect. We therefore hold that the heirs' threats were potential claims, coverage for which was properly denied as untimely under the express terms of the contract.[3] *See VTN Consol., Inc. v. Northbrook Ins. Co.,* 92 Cal.App.3d 888, 891–92, 155 Cal.Rptr. 172, 173–74 (1979) ("[A]n insurer has a right to limit the policy coverage in plain and understandable language.... [W]here ... its terms are plain and unambiguous, the courts have a duty to enforce the contract as agreed upon by the parties.").[4]

## III

As the district court correctly granted summary judgment in favor of National Union on the coverage question, appellants' tort and statutory causes of action were properly denied as well. *See Murray v. State Farm Fire & Casualty Co.,* 219 Cal. App.3d 58, 65–66, 268 Cal.Rptr. 33, 37 (1990); *Brodkin v. State Farm Fire & Casualty Co.,* 217 Cal.App.3d 210, 265 Cal. Rptr. 710, 714 (1989).

---

**2.** We thus find that "claim" is not an ambiguous term in light of the overall policy structure, *see also California Union Ins.,* 914 F.2d at 1276 (holding that policy similar to the one at issue here was not ambiguous), and reject appellants' suggestion that the policy should be interpreted so as to favor coverage *see State Farm v. Khoe,* 884 F.2d at 406 (doctrine of reasonable expectation of coverage only operates when there is an ambiguity).

**3.** We reject appellants' argument that California's notice-prejudice rule precludes National Union from relying on the policy's notice provision as a basis for denying their claim. *See Burns v. International Ins. Co.,* 929 F. 1422 (9th Cir.1991).

**4.** We would reach the same conclusion even if we did not rely on the terms of the policy to interpret the meaning of "claim" and relied instead on case law involving similar contentions. No "claim" was made on appellants or other members of the Pea Soup Board of Directors, since the October 11 meeting was not a meeting of the Board, but an informal meeting between shareholders and management, and no demand for repayment was ever made to the Board. *See Williamson & Vollmer Eng'g, Inc. v. Sequoia Ins. Co.,* 64 Cal.App.3d 261, 269, 134 Cal.Rptr. 427, 431 (1976) (citation omitted) (to constitute a "claim" a "demand for something due or believed to be due" must be made). Second, apart from general allegations of wrongdoing, there was never a concrete assertion of legal right, only a recognition that the heirs would seek legal counsel in anticipation of *possible* legal action. *Id.* ("claim" denotes the "assertion of a legal right, as distinguished from a recognition of that right"). The Rapp declaration, asserting that on October 31, 1981, the heirs' attorney conveyed his clients' unequivocal intention to bring suit, does not suggest a different result since it is inadmissible double hearsay which cannot be considered on a motion for summary judgment. *Security Servs., Inc.,* 854 F.2d 1179, 1181–82 (9th Cir.1988).

Even if, as appellants claim, the entire Board of Directors had been accused by the heirs of having caused the overdraft, this contention, standing alone, does not constitute a claim. As the Sixth Circuit observed in interpreting a similar directors and officers liability policy, "[A] claim that a wrongful act has occurred is not the same thing as a claim for payment on account of a wrongful act." *MGIC Indem. Corp. v. Home State Sav. Ass'n,* 797 F.2d 285, 288 (6th Cir.1986). "Although 'claim' often means 'contention,' that is not the use to which it has been put in [a directors and officers liability] insurance agreement." *Id. See also Gilliam v. American Casualty Co.,* 735 F.Supp. 345, 352 (N.D. Cal.1990) ("[Under a claims-made policy] it is irrelevant when the wrongful acts occurred. What matters is when a *loss* occurs, and losses by definition can only occur when a claim is made...."); *Williamson,* 64 Cal.App.3d at 269, 134 Cal.Rptr. at 431 (citation omitted) ("A 'claim' is not synonymous with ... [an] occurrence....").

IV

For all the foregoing reasons, the judgment of the district court is AFFIRMED.