62 F.3d 1425
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David SONDHI, Plaintiff-Appellant,
v.
LOCKHEED MISSILES & SPACE COMPANY, INC., Defendant-Appellee.
 No. 93-17207.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 1995.
Decided Aug. 1, 1995.
 
 Before: SCHROEDER, BEEZER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 David Sondhi brings this action against his former employer, Lockheed Missiles and Space Company (Lockheed), alleging that Lockheed discriminated against him on the basis of his national origin, in violation of Title VII of the Civil Rights Act, 42 U.S.C. Secs. 2000e, et seq., and his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Secs. 621, et seq., when it discharged him from employment. The district court granted summary judgment in favor of Lockheed, holding that Sondhi had failed to establish a prima facie case of employment discrimination or to present evidence sufficient to show Lockheed's asserted nondiscriminatory reason for its decision to discharge him was pretextual. Sondhi appeals the district court's order.
 
 
 3
 We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS
 
 4
 From August 1980 until May 1990, Sondhi, who is a dark-skinned East Indian male, was employed in Lockheed's Information Systems Division--initially as a Data Systems Programming Analyst and, after being promoted, as a Data Administration Specialist. In May 1990, when he was fifty-three years old, Sondhi was laid off from his job.
 
 
 5
 After exhausting his administrative remedies with the EEOC, Sondhi filed an action in district court alleging that his layoff was motivated by illegal discrimination on the basis of national origin, in violation of Title VII,[1] and age, in violation of the ADEA.[2] In support of his contentions, Sondhi offered the following facts which, for purposes of this appeal, we presume to be true. See Lindahl v. Air France, 930 F.2d 1434, 1437 (9th Cir. 1991) (At the summary judgment stage, "[t]he evidence of the opposing party is to be believed") (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).
 
 
 6
 In 1980, Sondhi was supervised by project leaders Vicki Papazoni and Roger Wasson, Papazoni's husband, on two separate projects. Wasson had Sondhi removed from the project he was supervising. Papazoni, in turn, complained to Sondhi's manager at the time, Bob McCarthy, that Sondhi lacked the expertise necessary for doing the tasks assigned to him on the project for which she was responsible. McCarthy agreed with Sondhi that Sondhi was qualified for the job. He explained that "Vicki does not like to work with people she doesn't like, especially when she is in charge."[3] He also acknowledged having "similar problems" with Papazoni and other employees.
 
 
 7
 In 1981, Sondhi was assigned to work under the supervision of G.R. Reichers. At several staff meetings between 1982 and 1986, Reichers told Sondhi and others present that the "corporate fathers would like to see the average age of the company come down, significantly, Lockheed has a reputation of having too many older people."
 
 
 8
 Between 1981 and 1984, Reichers continually referred to Sondhi and the department's other Data Administration Specialist, Lakhi Kahlon--who is also East Indian--as "Jose and Armando," presumably because both men have dark skin.[4] Reichers's bias against minorities other than East Indians was manifested when, sometime in the mid-1980s, he asked Sondhi to screen out applicants for positions in the department who had "Black sounding" names. Reichers also asked Sondhi to fabricate a complaint against an Asian employee and, when Sondhi refused, accused him of being "disloyal" to the department.
 
 
 9
 In 1984, Sondhi asked Reichers when he would be promoted. Reichers responded that there were too many Indians in leadership positions. Specifically, Reichers said:
 
 
 10
 You guys are lucky to have been promoted under Len Smith. Things are different now. Under current management, neither you nor Kahlon would have been promoted to your current grade. They're asking, "Have you got to be an Indian to become a project leader?"
 
 
 11
 In 1989, Sondhi again came under the supervision of Vicki Papazoni. As one of her responsibilities, Papazoni was in charge of "Project 90's," a project designed to develop and implement a new computer system for the Division, and to train Division employees how to use the system. Sondhi was not invited to participate in this project. On various occasions, Papazoni verbally abused both Sondhi and Kahlon in front of the entire staff. Sondhi expressed concern to his current supervisor, Richard Gilberg, that Papazoni was "culturally biased" because she did not treat non-minority employees in this manner. Gilberg told Sondhi he thought Sondhi was correct.
 
 
 12
 Sondhi also introduced the following evidence in support of his claims of age and national origin discrimination: (1) statistics indicating the number of internal complaints of age and national origin discrimination lodged against Lockheed between 1988 and 1992;[5] (2) statistics showing the number of Lockheed employees over and under the age of forty who were terminated annually from 1988 to 1992, and demonstrating that in 1992 the number of terminated employees over forty nearly doubled; (3) an article published November 22, 1992 in the San Jose Mercury News in which a Lockheed executive, Donald Tang, expresses his belief that Asian-American scientists and engineers face a "glass ceiling" in the defense industry; (4) a declaration by John Milton, a former Lockheed executive, in which Milton states that sometime in the spring of 1986 he received a memorandum from David Montague, the Assistant General Manager of Lockheed's Missile Systems Division, directing MSD managers not to give salary increases to anyone over the age of sixty and not to promote anyone over the age of forty into a managerial position; and (5) a 1988 memorandum authored by Sam Araki, a Lockheed executive in the Space Systems Division, which stressed the need for recruiting "young" talent.
 
 
 13
 Lockheed disputed Sondhi's claim that the decision to terminate him was motivated by his age and national origin. The company contended Sondhi's termination was part of a company-wide force reduction necessitated by the post-Cold War decline in demand for military hardware and technology. According to Lockheed, the reduced budget allocated to the Information Systems Division due to the projected decrease in business required the elimination of five full-time positions from that department. In assessing the needs of the department, the department manager--Richard Gilberg--determined that one of the two Data Administration Specialist positions could be eliminated.
 
 
 14
 Lockheed managers annually prepare Salaried Performance Appraisals for each of their employees. Based on these evaluations, employees are ranked against other employees who perform the same or similar functions within a particular department. When business conditions require a reduction in the work force, Lockheed managers rely upon the relative performance of employees, as indicated by the annual Salaried Performance Appraisals, as well as upon the employees' relative seniority, to determine who should be selected for layoff.
 
 
 15
 Sondhi presented evidence that, during his years of employment with Lockheed, he consistently received favorable annual reviews from his superiors. However, Lockheed submitted evidence that Kahlon--the only other Data Administration Specialist in Sondhi's department--consistently rated higher. Lockheed contended that, because Kahlon's performance ranking was higher than Sondhi's, Gilberg selected Sondhi for termination. Lockheed also asserted that, because Kahlon is of the same national origin as Sondhi and the two men are of substantially the same age, the fact that Khalon was retained proves the decision to terminate Sondhi was not motivated by either age or national origin discrimination.
 
 
 16
 Sondhi attempted to show Lockheed's asserted legitimate business reason for its decision to fire him--a necessary force reduction in which he, as the lowest ranking employee in his functional category, had to be let go--was pretextual. He asserted that immediately before his termination, four new, younger employees were hired in his department. He also contended that after his termination Lockheed continued to seek new hires, that he applied for some of the positions which Lockheed advertised as available and that, although he was qualified for those positions, he was not hired. He also contended that Lockheed's purportedly neutral employee ranking process was actually highly subjective, and that employees were ranked according to the likes and dislikes of particular supervisors.
 
 
 17
 The district court held that Sondhi had presented insufficient evidence to establish a prima facie case of either age or national origin discrimination. Even if the evidence did suffice to state a prima facie case, the court held Sondhi had not produced sufficient evidence to demonstrate that Lockheed's asserted nondiscriminatory reason for its decision to terminate him was pretextual, and that the real reason for its employment decision was discrimination. Accordingly, the court granted summary judgment in favor of Lockheed.
 
 LEGAL STANDARDS
 
 18
 We review de novo a district court's grant of summary judgment. Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir. 1993). Summary judgment should be granted only if "the pleadings, depositions, answers or interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists, and summary judgment is inappropriate, if there is a fact in contention which could affect the outcome of the suit under the governing law, and the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir. 1991).
 
 
 19
 Sondhi's discrimination claims are based on a theory of disparate treatment--he asserts Lockheed treated him less favorably than other employees because of his age and national origin.[6] To prevail on a claim of disparate treatment based on impermissible factors such as national origin or age, a plaintiff must prove his employer's challenged decision was motivated by intentional discrimination.[7] Washington v. Garrett, 10 F.3d at 1431-32.
 
 
 20
 Because in most employment discrimination cases direct evidence of the employer's discriminatory motivation is unavailable or difficult to obtain, the Supreme Court has set forth an indirect method of proof which relies on presumptions and shifting burdens of proof. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).[8] Under this familiar framework, to survive summary judgment in a disparate treatment case, a plaintiff must carry the initial burden of establishing a prima facie case of employment discrimination. Washington v. Garrett, 10 F.3d at 1432. By establishing the prima facie case, the plaintiff creates a presumption that the employer engaged in intentional discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. at 254. However, if the employer articulates a legitimate, nondiscriminatory reason for its employment decision, the presumption of unlawful discrimination "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1993). The plaintiff then must raise a genuine factual issue as to whether the employer's proffered reason is a pretext for discrimination.[9] Washington v. Garrett, 10 F.3d at 1432. "If [the] plaintiff succeeds in raising a genuine factual issue regarding the authenticity of the employer's stated motive, summary judgment is inappropriate, because it is for the trier of fact to determine which story is to be believed." Id.
 
 
 21
 Because intent is at issue in discrimination cases, summary procedures should be used "prudently" and "judiciously" in such cases. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990); Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1419 (9th Cir. 1988). We have previously explained that "[w]e require very little evidence to survive summary judgment" in a discrimination case because the ultimate question--whether the employer intended to discriminate--is a pure question of fact which usually can be resolved only through a "searching inquiry" conducted by the factfinder upon a full record. Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1111 (9th Cir. 1991). Nonetheless, summary judgment is proper in appropriate employment discrimination cases. Steckl v. Motorola, Inc., 703 F.2d 392, 393-94 (9th Cir. 1983). "[O]ne purpose of the allocation of the burdens of proof and production in [such] actions is to help district courts identify meritless suits and to stop them short of full trial." Id. at 394 (quoting Douglas v. Anderson, 656 F.2d 528 (9th Cir. 1981)).
 
 DISCUSSION
 I. Prima Facie Case
 
 22
 To state a prima facie case of employment discrimination under either Title VII or the ADEA, a plaintiff is generally required to show that: (1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he was discharged; and (4) he was replaced by a member of an unprotected class with equal or inferior qualifications. Wallis v. J.R. Simplot, 26 F.3d at 891.
 
 
 23
 In this case, the parties do not dispute that Sondhi satisfied the first three elements of the prima facie case. As an East Indian between the ages of forty and seventy, he is a member of a protected class under both Title VII and the ADEA. Lockheed concedes he was performing his duties in a satisfactory manner, and there is no question he was laid off.[10]
 
 
 24
 The crux of the dispute centers on the replacement element. Lockheed argues Sondhi cannot establish a prima facie case of discrimination because he was "replaced" by a person in his protected class. Kahlon, who is substantially the same age as Sondhi and also an East Indian, was retained in the position of Data Administration Specialist while Sondhi was discharged. Therefore, Lockheed contends, Sondhi cannot show its decision to terminate him was motivated by discrimination on the basis of either national origin or age.
 
 
 25
 We have previously held that where, as here, the discharge results from a general reduction in force, the plaintiff's failure to establish the "replacement" element of the prima facie case is "not necessarily fatal." Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993). If the plaintiff succeeds in showing--through direct, circumstantial, or statistical evidence--that he was discharged "under circumstances giving rise to an inference of discrimination," he can state a prima facie case even without demonstrating that others not in his protected class were treated more favorably. Rose v. Wells Fargo, 902 F.2d at 142; Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir. 1994). See also Kehoe v. Anheuser-Busch, Inc., 995 F.2d 117, 119 (8th Cir. 1993); EEOC v. Clay Printing Co., 955 F.2d 936, 943 (4th Cir. 1992) (recognizing that, in reduction in force context, plaintiffs could state prima facie case of age discrimination even though other employees over the age of forty were retained, if they could demonstrate the employer "did not treat age neutrally" when it decided to terminate them).
 
 
 26
 The fact that a member of the plaintiff's protected class was retained while the plaintiff was discharged may under some circumstances cut against a finding of discrimination, but it is not necessarily conclusive. See Lam v. University of Hawaii, 40 F.3d 1551, 1561 (9th Cir. 1994) (recognizing that defendant's favorable treatment of other Asian women could not necessarily defeat plaintiff's claim at trial). In a case such as this, where business conditions purportedly required that only one position be eliminated, the plaintiff may still be able to produce evidence that he was discharged "under circumstances giving rise to an inference of discrimination."
 
 
 27
 Nonetheless, we agree with the district court that in this case Sondhi has not presented evidence sufficient to raise an inference that his discharge was motivated by discrimination. For the sake of clarity, we analyze separately each piece of evidence Sondhi presented in support of his prima facie case, and explain why the evidence, considered separately and as a whole, was insufficient.
 
 
 28
 A. Treatment by Papazoni and Comments by Reichers
 
 
 29
 Sondhi introduced evidence which, viewed in the light most favorable to him, tends to show that Vicki Papazoni refused to work with employees she did not like, that she did not like him and that, conceivably, this dislike stemmed from a cultural bias. Sondhi also offered evidence suggesting that G.R. Reichers was biased against minority employees. This evidence consisted of Reichers's references to Sondhi and Kahlon as "Jose and Armando," and his request that Sondhi screen out applicants with "Black sounding" names. However, Papazoni's feelings about Sondhi, and Reichers's personal biases, are irrelevant to this action because neither Papazoni nor Reichers was involved in the decision to lay Sondhi off. See Schneider v. TRW, Inc., 938 F.2d 986, 992 (9th Cir. 1991).
 
 
 30
 The record establishes incontrovertibly that the decision to terminate Sondhi was made without any input from either Papazoni or Reichers. Richard Gilberg stated that it was Sondhi's 1989 performance evaluation which was used to determine his relative score, and Sondhi does not dispute this. Sondhi's 1989 evaluation was prepared by his first-level supervisor, Daniel Coughenour, whom Sondhi himself described as "overall, a fair person." Sondhi Deposition at 248-49. Sondhi presented no evidence to suggest that Coughenour's evaluation of him was in any way influenced by either Papazoni or Reichers. Compare Lam v. University of Hawaii, 40 F.3d at 1560 (faculty hiring process not insulated from illegitimate biases of particular faculty members because faculty as a whole votes on whether to extend an offer of employment).
 
 
 31
 In support of his discrimination claims, Sondhi also relied on Reichers's comment that the "corporate fathers would like to see the average of the company come down" and his suggestion that "under current management" no more Indians would be promoted to leadership positions. Citing Merrick v. Farmer's Ins. Group, 892 F.2d at 1438, Lockheed contends these were "stray remarks" by a non-decisionmaker which cannot in themselves create a triable issue of fact.
 
 
 32
 We believe these comments were more than the "stray remark" involved in Merrick, which consisted of a hiring executive's comment that he selected someone other than the plaintiff because that person was "a bright, intelligent, knowledgeable, young man." Merrick v. Farmers Ins. Group, 892 F.2d at 1438. Nonetheless, the comments were very general and, especially in light of the fact that Reichers had no role in the decision to fire Sondhi, not related in any way to his discharge. As such, they cannot support an inference that Sondhi's termination was motivated by discrimination. See Nesbit v. Pepsico, Inc., 994 F.2d at 705 (holding comments made by plaintiff's supervisor and by defendant's Vice President of Personnel that "[w]e don't necessarily like grey hair" and "[w]e don't want unpromotable fifty-year olds around," while not merely "stray remarks," were too general and unrelated to plaintiff's termination to create an inference of discrimination).
 
 B. Tang Article
 
 33
 Sondhi also offered the Tang newspaper article in support of his claim of national origin discrimination. In that article, Donald Tang, a former Lockheed executive, states that Asian- Americans experience a "glass ceiling" in the defense industry-- that is, they are "able to advance, but only to a limit." As the district court found, however, Tang's comment is directed at the defense industry in general, not at Lockheed specifically. Moreover, the only comment in the article which Tang specifically directs toward Lockheed is actually positive on the issue of discrimination: Tang states that "Lockheed has a good program to promote equal opportunity for all employees so they can reach their fullest potential."
 
 C. Araki Memorandum
 
 34
 In support of his age discrimination claim, Sondhi offered a memorandum written in 1988 by Sam Araki, a Lockheed executive in the Space Systems Division. This memorandum addresses the problem of losing recent graduate engineers to other companies, and emphasizes the need to continue attracting "high quality talent" in order to be on the "cutting edge of technology" and "remain[] competitive during the period of constricting available budgets." Araki explains that, to this end, a fund has been established which "permits preferred treatment for young people with specific critical skills." Araki also states that "young talent must be challenged to their perceived limit and led to understand the importance of their contribution."
 
 
 35
 Setting aside the fact that the Araki memorandum was not directed to Sondhi's department, these statements are not probative of age discrimination. Rather, they demonstrate Araki's proper concern for the future viability of his Division. See EEOC v. Clay Printing Co., 955 F.2d at 942 (holding references to "young blood" and comments about the need to "attract newer, younger people" did not support an inference of age discrimination because it is a truism that "future realization of the potential of an enterprise lies principally with those who will be in positions of leadership and responsibility in the future") (quoting Smith v. Flax, 618 F.2d 1062, 1066 (4th Cir. 1980)). Sondhi offered no evidence to indicate that any older employees were disadvantaged by Araki's recognition of the importance of attracting the next generation of engineers to Lockheed's Space Systems Division.
 
 D. Milton Declaration
 
 36
 Sondhi contends the Milton declaration supports his claim of age discrimination. However, Milton's reference to the Montague memorandum--which allegedly directed managers in Lockheed's Missile Systems Division not to promote anyone over forty and not to give salary increases to anyone over sixty--is inadmissible double hearsay which cannot be considered on a motion for summary judgment. See Winkler v. National Union Fire Ins. Co., 930 F.2d 1364, 1367 n.4 (9th Cir. 1991).
 
 
 37
 Even if it could be considered, the Milton declaration fails to suggest that Sondhi was terminated under circumstances raising an inference of discrimination. As the district court found, the Montague memorandum was not addressed to managers in Sondhi's department and, therefore, says nothing about the policies of that department with respect to the promotion and compensation of older employees.
 
 E. Statistics
 
 38
 Finally, to bolster both his national origin and age discrimination claims, Sondhi offered statistics regarding the number of age and national origin discrimination claims that were asserted against Lockheed between 1988 and 1992. Sondhi also presented statistics reflecting the relative number of Lockheed employees over and under the age of forty who were terminated between 1988 and 1992.
 
 
 39
 Discriminatory intent can be inferred from statistical evidence, but courts should rely on statistics "with caution." Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d at 1419. To support a prima facie case of disparate treatment, statistics must demonstrate a "stark pattern" of discrimination unexplainable on other grounds. Rose v. Wells Fargo & Co., 902 F.2d at 1423. Moreover, absent some showing of their relevance, statistics are inadequate to raise an inference of discrimination. Villanueva v. Wellesley College, 930 F.2d 124, 131 (1st Cir.), cert. denied, 502 U.S. 861 (1991).
 
 
 40
 With respect to the statistics Sondhi presented of other discrimination claims that have been brought against Lockheed, there is no indication how any of these claims were resolved, or whether they involved Sondhi's supervisors or even his department. As the district court held, "[w]ithout any further or more specific information about the nature of the [other] claims filed against [Lockheed] that would tend to tie the circumstances surrounding these claims to [Sondhi's] circumstances, the number of claims filed alone is insufficient to create an inference of discrimination."
 
 
 41
 The termination rates of employees over and under the age of forty are equally unhelpful because Sondhi offered no information comparing these percentages to the employees' relative representation in Lockheed's work force.[11] See Villanueva v. Wellesley College, 930 F.2d at 131 (statistics showing percentage of minority faculty members at college irrelevant absent indication of percentage of minorities in relevant labor market). Assuming "older" and "younger" employees are equally represented in the work force, the district court correctly found that between 1988 and 1991, the statistical disparity in terminations among the groups was insignificant. In fact, in 1988 and 1989, more "younger" employees were terminated than "older" employees.
 
 
 42
 Sondhi relied mainly on the fact that, in 1992, the number of "older" employees who were terminated nearly doubled. Lockheed showed, however, that the number of "older" employees who were "terminated" in 1992 included 1,345 who accepted a special early retirement package which was offered only in that year. That number also included employees who retired voluntarily under the company's normal retirement policy, voluntarily resigned for personal reasons, or died. The 1992 statistics, therefore, do not show a "stark pattern of discrimination unexplainable on grounds other than age." Rose v. Wells Fargo & Co., 902 F.2d at 1423 (statistics showing greater percentage of older than younger employees were terminated explained by fact that job displacement due to merger occurred mostly at the management level, and older employees are more likely to occupy managerial positions). Moreover, as the district court held, the 1992 figures have little relevance to Sondhi's claim since he was terminated in 1990.
 
 
 43
 Finally, Lockheed submitted statistics indicating that between 1989 and 1992, the relative number of "older" employees in its work force increased from 54.4% to 59.4%. Under these circumstances, it is impossible to say Sondhi's statistics raised an inference that he was terminated for discriminatory reasons. See Rose v. Wells Fargo & Co., 902 F.2d at 1425 (summary judgment in favor of employer appropriate where statistics indicate work force was slightly older post-merger than it was pre-merger); EEOC v. Clay Printing, 955 F.2d at 943 (no inference of discrimination where average age of work force increased as result of layoff).
 
 II. Pretext
 
 44
 Even assuming the evidence Sondhi presented did suffice to state a claim of either age or national origin discrimination, the district court still did not err in granting Lockheed's motion for summary judgment. Lockheed articulated a legitimate nondiscriminatory reason for its decision to discharge Sondhi: Business conditions necessitated a general reduction in force, the needs of the Information Systems Division were such that one of the two Data Administration Specialist positions could be eliminated, and Sondhi--as the lower-ranking employee--was let go rather than Kahlon. Because Lockheed carried its burden of production on this issue, it was incumbent upon Sondhi to produce evidence sufficient to permit a rational trier of fact to find that Lockheed's asserted reason for its decision to terminate him was a pretext for discrimination. Sondhi failed to do so.
 
 
 45
 Sondhi attempted to show pretext by arguing there was no force reduction in his department. To this end, he alleged that prior to his layoff the department hired four new, younger employees. Sondhi presented no information, however, regarding the positions these employees were hired to fill, or whether their functions were in any way related to those he had performed prior to his termination. He also did not indicate precisely how soon before his discharge these employees joined the department.
 
 
 46
 McDonnell Douglas does not preclude an employer from using business judgment to reorganize, even in the context of a reduction in force. When undergoing an overall force reduction, it may make economic sense for an employer to eliminate some positions while creating others. Therefore, absent a showing that Lockheed had a continuing need for Sondhi's particular skills and services and the new employees were hired to fill that need, no adverse inference can be drawn from the fact of their hiring, even assuming it occurred in close proximity to the alleged force reduction. See Rose v. Wells Fargo & Co., 902 F.2d at 1421; Sengupta v. Morrison-Knudson Co., Inc., 804 F.2d at 1072, 1075 (9th Cir. 1986) (in reduction in force context, plaintiff's claim collapses absent a demonstration of the employer's continuing need for his skills and services).
 
 
 47
 Sondhi also attempted to prove pretext by submitting evidence, in the form of job advertisements and postings, that Lockheed continued to seek new hires after his termination, that he applied for those positions and that--although he was qualified--he was not selected. Again, there is no evidence the jobs advertised were for Sondhi's position or even a related one. See Schneider v. TRW, Inc., 938 F.2d at 992 (fact that employer posted job notice after plaintiff's discharge not probative absent evidence the posting was for plaintiff's job). In fact, some of these positions apparently were advertised not by Lockheed, but by various of its independent affiliates which administer their own employment programs. Sondhi also did not identify any specific job that he should have gotten instead of a person not in his protected class. In fact, he presented no evidence that any of the advertised jobs were filled by persons outside his protected class, or were even filled at all. Moreover, the fact that some of these positions were advertised as much as a year after Sondhi's termination "substantially weakens" their probative value. Rose v. Wells Fargo & Co., 902 F.2d at 1422. An employer may hire additional employees after undergoing a general force reduction. This may be necessary, for example, because of the need to fill other openings created by subsequent attrition. Nesbit v. Pepsico, Inc., 994 F.2d at 705.
 
 
 48
 Finally, Sondhi attempted to raise a genuine issue regarding pretext by arguing that the process by which he was selected for discharge was not, as Lockheed asserted, a neutral ranking procedure, but rather a subjective system in which employees were scored according to the likes and dislikes of their superiors. In support of this contention, Sondhi offered only his own assertion that he had sat in on sessions in which supervisors predetermined how they wanted the employees to rank and ranked them accordingly, regardless of actual performance.
 
 
 49
 As the district court found, Sondhi provided no specifics indicating when these meetings took place, which supervisors were present, and which employees were affected. More importantly, he did not even allege that the supervisors' subjective decisions were motivated by discrimination. Subjectivity in employment decisions is only unlawful if it is used as a mechanism for discrimination. Sengupta v. Morrison-Knudsen Co., 804 F.2d at 1075. Even if the discriminatory bias of supervisors did influence the employee ranking process, Sondhi has not alleged that his own evaluation was so affected. Therefore, he did not present evidence upon which a rational juror could base a finding that Lockheed's asserted reason for discharging him was a pretext for discrimination. See St. Mary's Honor Ctr. v. Hicks, 113 S. Ct at 2749 (ultimate question is not merely whether employer's asserted reason for its employment decision is pretextual, but whether it is a pretext for discrimination).
 
 III. Sanctions
 
 50
 Lockheed asks us to exercise our discretion, under Federal Rule of Appellate Procedure 38 and 28 U.S.C. Sec. 1912, to award it costs and attorneys fees as sanctions against Sondhi for bringing a frivolous appeal. We decline to do so.
 
 
 51
 Lockheed contends Sondhi's appeal is frivolous because it simply "regurgitates" the arguments Sondhi made before the district court. This is not the standard for awarding sanctions. On appeal of a grant of summary judgment, a party is entitled to de novo review. While it may be better advocacy to point out the specific errors of the trial court, it is not necessarily "frivolous" to simply submit the arguments made below for the appellate court's consideration. The question is whether the arguments themselves are "wholly without merit." Amwest Mortg. Corp. v. Grady, 925 F.2d 1162 (9th Cir. 1991). While we find Sondhi's arguments on appeal not ultimately meritorious, they are also not so wholly without merit as to warrant imposition of sanctions.
 
 CONCLUSION
 
 52
 We affirm the district court's grant of summary judgment in favor of Lockheed because Sondhi failed to state a prima facie case of employment discrimination, and did not raise a genuine issue for trial regarding pretext. We deny Lockheed's request for attorney fees and sanctions.
 
 
 53
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. Sec. 200e-2(a)(1)
 
 
 [2]
 The ADEA forbids conduct identical to that prohibited by Title VII when the discrimination is based on an individual's age. 29 U.S.C. Sec. 623(a)(1). The Act's prohibitions are limited to individuals who are at least forty but less than seventy years old. 29 U.S.C. Sec. 631(a)
 
 
 [3]
 In his appellate briefs, Sondhi states that Wasson made this comment. However, in his declaration in opposition to Lockheed's motion for summary judgment, he attributes this comment to McCarthy
 
 
 [4]
 Lockheed argues we should ignore these comments because the district court ordered them stricken from the record. However, the district court itself considered these comments to the extent Sondhi's declaration suggested they were not isolated ethnic slurs but part of a pattern which continued until he was terminated
 
 
 [5]
 Sondhi contends his statistics indicated 180 complaints of national origin discrimination were asserted against Lockheed between 1988 and 1991, and 162 complaints of age discrimination were lodged with the company between 1988 and 1992. Lockheed states the statistics showed there were 78 complaints of race and national origin discrimination combined. We do not address this disparity because the actual number of complaints does not make a difference to the resolution of this case
 
 
 [6]
 Sondhi's First Amended Complaint states two causes of action: (1) disparate treatment and (2) age discrimination. The allegations in the first cause of action are directed toward establishing discrimination on the basis of national origin. While the second cause of action is not entitled "disparate treatment," the allegations it sets forth are clearly directed toward establishing a disparate treatment claim. Moreover, in their summary judgment papers and in their appellate briefs, the parties consistently characterize and analyze Sondhi's claims under the disparate treatment model
 
 
 [7]
 Proof of intent to discriminate is not required in disparate impact cases, which challenge facially neutral employment practices having a discriminatory impact on members of a protected class. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990). Because Sondhi has not chosen to proceed under a disparate impact theory, we do not discuss the burdens of proof applicable in such cases, nor analyze the outcome of this case were it brought under such a theory. See Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1418 (9th Cir. 1988) (not addressing disparate impact where clear from parties' briefs plaintiff based his claim on theory of disparate treatment)
 
 
 [8]
 Although McDonnell Douglas and Burdine were both Title VII cases, disparate treatment claims under the ADEA are analyzed by the same standard. Merrick v. Farmer's Ins. Group, 892 F.2d 1434, 1436 (9th Cir. 1990); Rose v. Wells Fargo, 902 F.2d at 1420. Therefore, we combine our analysis of Sondhi's Title VII and ADEA claims. See Wallis v. J.R. Simplot, 26 F.3d at 888
 
 
 [9]
 The analysis is slightly different in "mixed-motives" cases, where the plaintiff alleges that both legitimate and discriminatory motives played a role in the employer's adverse employment decision. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). In such cases, "it 'makes no sense to ask' whether the legitimate reason was pretextual". Washington v. Garrett, 10 F.3d at 1432, n.15 (quoting Price Waterhouse, 490 U.S. at 247). Instead, the plaintiff "must show that it is more likely than not that a protected characteristic 'played a motivating part in [the] employment decision."' Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1110 (9th Cir. 1991) (quoting Price Waterhouse, 490 U.S. at 244)). If the plaintiff succeeds in doing so, the employer must show that the decision would have been the same even if the protected characteristic had played no role. Id
 In opposing summary judgment and in his appellate briefs, Sondhi relied on a single-motive theory. The district court did not rule on the alternate mixed-motives theory, and Sondhi does not contend on appeal that it should have. Therefore, we analyze Sondhi's claims only under the single-motive "pretext" model.
 
 
 [10]
 For this reason, the fact that Sondhi received favorable annual evaluations is of no help to him in establishing his prima facie case. Lockheed does not dispute that Sondhi was a good employee. Rather, the company contends Kahlon was superior to Sondhi and therefore, when a force reduction became necessary, Sondhi was selected for layoff. Sondhi has not alleged he ranked higher than Kahlon in the annual performance reviews, nor could he do so based on the evidence presented
 
 
 [11]
 In its summary judgment order, the district court mentioned that Sondhi did offer such statistics. However, the court did not indicate what those statistics were, Sondhi does not mention these statistics in his appellate briefs, and they do not appear in the excerpts of record