TASHIMA, Circuit Judge,
dissenting.
I disagree with the majority’s holding in Part II.A that Sections 7(B) and 7(C) are alternative notice provisions. This is not the evident purpose of including both of them in the policy, and is not a reasonable interpreta *-235 tion of the insuring agreement. We should strive to give meaning to both provisions. “The whole of a contract is to be taken together so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.” Helfand v. National Union Fire Ins. Co., 10 Cal.App.4th 869, 887, 13 Cal.Rptr.2d 295, 304 (1992)(emphasis in originalXquoting Cal.Civ.Code § 1641). In a claims made policy, like the one before us, such a reasonable interpretation can, and should, be given to them.
That is, indeed, what the Seventh Circuit did in a case involving similar policy provisions. It characterized the Section 7(C) type of notice as “occurrence notice” and the Section 7(B) type of notice as “claim notice.” Each serves a different purpose. Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 369 (7th Cir.1990)(construing Illinois law). It held that these two notice requirements were sequential, rather than alternative, stating:
Continental [the insured] failed to comply with an explicit condition precedent and is therefore barred from recovering on its claim. Its argument that occurrence notice and claim notice are alternative -rather than sequential requirements is contrary to the language and evident purpose of the requirements. The insurer wants to know whether there is a possibility that it will be receiving a claim after the policy period, but of course it also wants to receive notice of that claim when and if it materializes.
Id. (emphasis added). This is the reasonable meaning of the two notice provisions.
Because this is a claims made policy, the occurrence notice provision of Section 7(C) is a timing provision. It serves only to bring claims made after the policy and discovery periods have expired within the policy’s coverage, as long as those post-policy-period claims arise out of properly noticed wrongful acts occurring during the coverage period. The majority, however, misconstrues this section in two ways. First, although notice of the occurrence of a wrongful act under Section 7(C) brings post-policy claims within coverage, it does not obviate claim notice under Section 7(B). Second, Section 7(C) does not apply to third-party claims made against the insured within the policy period. The majority’s leap of logic is its conclusion that, “[u]nder this séetion [7(C) ] Continental considers the claim to have been made and notice given when the insured notifies Continental of the wrongful act.” (Emphasis added.) If, by the emphasized phrase, “and notice given,” the majority means claim notice, nowhere in Section 7(C) does it provide that occurrence notice is the same as claim notice. All that the section provides is that such subsequent claims shall be “treated as” claims made. And Section 7(B) is unambiguous that a condition precedent to coverage for all claims made is notice of the claim.
The majority then goes on to assert that, “Nothing in the policy indicates that notice must be given a second time in order to invoke coverage.” It would be more accurate to state that nothing in the policy waives the giving of claim notice with respect to a subsequently-made claim which is treated as a claim made within the policy period by Section 7(C).
To repeat, while it may be true that Section 7(C) provides that claims made subsequent to the occurrence notice “shall for the purpose of this policy be treated as a claim made within the period of this policy,” neither that section nor any other provision of the policy provides that such a claim is excepted from the claim notice requirement of Section 7(B). In fact, Section 7(B) is unambiguous that claim notice is a condition precedent to coverage for all claims made under the policy.
Further, the majority’s construction of Section 7(C) to apply to third-party claims made against the insured during the policy period is incongruous with the plain language of Section 7(C). Section 7(C) acts to treat a claim made against the insured subsequent to a wrongful act as a “claim made within the period of [the] policy.” Yet, this language is superfluous where the claim was already made within the policy period. I decline to read the insuring agreement to produce this unnecessary result. Instead, Section 7(C) should apply only to bring claims made outside of the period of the policy within the policy, i.e., as a timing provision.
The majority’s strained reading of Section 7(C) was squarely rejected by the California Court of Appeal in Helfand, which held:
*-234 [T]he concept of subsequent claims developed in clause 7(c) for all practical purposes refers only to claims made after the policy expires, and, thus, this provision is inapplicable to claims made during the policy period.... This construction is in keeping with the purpose of the coverage tail, namely to ensure that losses arising from certain claims made after the policy expires will be treated as covered losses under the policy. Moreover, if clause 7(c) were read as encompassing all claims made after a comprehensive occurrence notice— whether made before or after expiration of the policy — it would be meaningless and redundant. A claim made during the policy period is “made during the currency” of the policy period and there is no need to treat it specially.
Helfand, 10 Cal.App.4th at 891-92, 13 Cal. Rptr.2d at 307 (internal citation omitted)(emphasis in original).
The majority attempts to distinguish Hel-fand by asserting that the court in that ease limited clause 7(e) to claims made after the policy period expired only to resolve an ambiguity in favor of the insured. However, as the passage quoted above makes clear, Hel-fand also recognized that this reading was dictated by the evident purpose of 7(c), and was necessary to avoid rendering the clause meaningless. Further, the central source of ambiguity in Helfand — whether claims arising out of reported wrongful acts should be allocated to the loss limit for a single policy year or to the total limit for the entire term of the policy — is not presented here. Indeed, Helfand notes that “the policy, taken as a whole, is not ambiguous,” and holds that claim notice must be given. Id. at 886-87,13 Cal.Rptr.2d at 303-04.
. The majority’s reliance on Winkler v. National Union Fire Ins. Co., 930 F.2d 1364 (9th Cir.1991), is also misplaced.[1] For rather than supporting the conclusion that Sections 7(B) and 7(C) provide alternative notice, Winkler is entirely consistent with my reading of the policy.
Like the case at bench, in Winkler, the insured learned of its potential liability for a wrongful act during the policy period. Id. at 1366-67. However, the majority conveniently ignores the fact that, unlike this case, in Winkler, a third-party claim was not made against the insured until after the policy had expired. Id. at 1366. Thus, Winkler was exactly the kind of situation Section 7(C) was meant to address: post-policy-period claims brought within the policy’s coverage by notice of a wrongful act during the policy period. It was for this reason that we stated that the insured “had a clear right under the policy to seek coverage for these inchoate claims.” Id. at 1367. We denied coverage in Winkler because the insured failed to provide occurrence notice of the wrongful acts, as required by Section 7(C). But nothing in Winkler supports the majority’s novel assertion that claims made during the policy period are controlled by an “alternative” notice provision in Section 7(C). Such claims are covered solely by Section 7(B).
Finally, the majority makes only a weak attempt to distinguish Harbor Ins. Co., and it is unpersuasive. It denigrates the value of claim notice to the carrier because it “merely” had the duty to indemnify and no duty to defend. But, surely, as Judge Posner observed, the carrier “also wants to receive notice of that claim when and if it materializes.” Harbor Ins. Co., 922 F.2d at 369. Claim notice is at the heart of a claims made policy because it helps to provide “certainty in gauging potential liability which in turn leads to more accurate calculation of reserves and premiums.” Homestead Ins. Co. v. American Empire Surplus Lines Ins. Co., 44 Cal.App.4th 1297, 1304, 52 Cal.Rptr.2d 268, 272 (1996) (quoting Helfand, 10 Cal.App.4th at 888, 13 Cal.Rptr.2d at 305). In addition, while Continental has no duty to defend, the majority ignores the fact that under Section 6 of the policy, it has the right to consent to all defense costs and settlements made by the insured. Without notice of the actual claim, this right is meaningless; Continental cannot accurately assess the reasonableness *-233 of the insured’s expenses or prepare itself to indemnify.
Because the majority, like the district court, misconstrues the sequential notice provisions of the claims made policy, I respectfully dissent.

. Ironically, MGM itself understood that Winkler actually undermines its position, and argued that Winkler is inapplicable. Appellee’s Br. at 26.