[No. B083676. Second Dist., Div. Three. Apr. 26, 1996.]

HOMESTEAD INSURANCE COMPANY, Cross-complainant and Appellant, v.
AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, Cross-defendant and Respondent.

1298

## COUNSEL

Zimmerman & Kahanowitch, Brian F. Zimmerman and Dee-Ann Jenkins for Cross-complainant and Appellant.

Sonnenschein, Nath & Rosenthal, Michael A. Barnes and Gregory L. Smith for Cross-defendant and Respondent.

## OPINION

### KITCHING, J.—

#### INTRODUCTION

"Claims made" insurance policies limit coverage to claims made during the policy period. An insurer thus bears responsibility only for the allowable claims filed during its policy period. Two insurers issued one-year policies to the insured, an escrow company. One complaint was filed against the escrow company during each of the policy periods. We reject the argument by the insurer of the later policy that the earlier policy should cover claims against the insured arising from both complaints. We hold that each insurance policy covers the claim made during its policy period, and affirm summary judgment in favor of the insurer that issued the earlier policy.

Plaintiffs Verdugo Escrow Company (Verdugo), One Central Bank, CB Service Corporation, and Lois McCauley (president of Verdugo, and an officer of CB Service Corporation) filed a complaint for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and declaratory relief against defendants Homestead Insurance Company (Homestead), American Empire Surplus Lines Insurance Company (American Empire), and other defendants not parties to this appeal.

Homestead filed a cross-complaint for declaratory relief, equitable contribution, and reimbursement against, among other defendants, American Empire. American Empire moved for summary judgment against the Verdugo complaint and against the cross-complaint filed by Homestead. Homestead filed a cross-motion for summary judgment against American Empire. The trial court granted summary judgment in favor of American Empire and denied Homestead's cross-motion for summary judgment. Homestead appeals. We affirm the granting of summary judgment.

#### STANDARD OF REVIEW

Summary judgment is granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc. § 437c, subd. (c); *Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719].) ■ After examining documents supporting a summary judgment motion in the trial court, this court independently determines their effect as a matter of law. (*Hulett* v. *Farmers Ins. Exchange* (1992) 10 Cal.App.4th 1051, 1057-1058 [12 Cal.Rptr.2d 902].) Where the facts are undisputed, the court can resolve the question of law in accordance

with general summary judgment principles. (*Adams* v. *Paul* (1995) 11 Cal.4th 583, 592 [46 Cal.Rptr.2d 594, 904 P.2d 1205].) ■ Absent a *factual* dispute as to the meaning of policy language, the interpretation, construction and application of an insurance contract is strictly an issue of law. (*Century Transit Systems, Inc.* v. *American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 125 [49 Cal.Rptr.2d 567].)

FACTS

American Empire issued an insurance policy to Verdugo for the period from March 6, 1990, to March 6, 1991. The policy provides coverage for "[l]oss which the Insured shall become legally obligated to pay, from any claim made against the Insured during the Policy Period." The policy provides that "[c]laims arising out of the same act or out of a series of interrelated acts . . . shall be treated as a single claim." The policy also provides that "[a]s respects such insurance as is afforded by the terms of this policy, the Company shall: (1) defend in his name and behalf any suit against the Insured alleging damages from, or connected with negligent acts, errors, omissions . . . ."

On November 28, 1990, John and Betty Minnick commenced an action, Minnick v. Verdugo Escrow Co. (Super Ct. Los Angeles County, No. BC015868), naming Verdugo, Rodney B. Swanson, and Registered Enterprises, Inc. (REI) as defendants. The complaint alleged causes of action for professional negligence, breach of fiduciary duties, and conspiracy to defraud by concealment arising from Minnick's agreement on May 15, 1989, to sell REI commercial real property at 2051, 2061, and 2071 Valderas Drive in Glendale. The parties agreed to retain Verdugo as their escrow agent. The Minnick escrow closed July 20, 1989. The complaint alleged that Verdugo negligently failed to record a trust deed securing a promissory note from REI at the same time Verdugo recorded the REI grant deed. The complaint alleged that Verdugo's negligence permitted recordation of an intervening trust deed, which demoted Minnick's trust deed and which later caused Minnick to suffer damages amounting to $909,131.35, plus interest.

Homestead issued an insurance policy to Verdugo for the period from March 6, 1991, to March 6, 1992. The policy insured Verdugo against "damages and related claims expenses first made by a person or organization against the insured during the policy period."

On September 20, 1991, Carey and Beverly McLeod and 32 other plaintiffs commenced an action, McLeod v. Lanfear (U.S. Dist. Ct. (C.D.Cal.), No. CV91-4964-RMT), naming Verdugo and 31 other defendants. The

McLeod complaint named all parties in the Minnick complaint, plaintiffs and defendants alike, as defendants. The 291-page complaint contained 31 causes of action. It alleged that since 1978, defendants, including Verdugo and Minnick, had defrauded more than 70 investors of more than $10 million by obtaining money or real property from investors in exchange for interests in other real property or promissory notes ostensibly secured by trust deeds on real property. The complaint alleged that Verdugo was involved in more than 50 fraudulent transactions beginning in 1978. The Valderas Drive property is one of the many properties involved in the McLeod complaint. The McLeod escrow on the Valderas Drive property closed December 7, 1987. The complaint alleged that defendants were investors, partners and lenders on various properties they acquired through foreclosure proceedings or deeds in lieu of foreclosure. Such properties were repeatedly transferred back and forth between defendants and other entities and individuals they controlled.

On September 24, 1991, Verdugo tendered its defense of the McLeod action to American Empire, which declined coverage because the McLeod claim did not fall within the policy period. Verdugo also requested that Homestead "provide a full defense against the claims asserted [in the McLeod Action]." Homestead advised Verdugo that it would defend Verdugo in the McLeod action.

On November 18, 1992, Verdugo filed an action against American Empire and other defendants. The complaint asserted that the McLeod action constituted a claim made during the American Empire policy because both the Minnick and McLeod actions involved a "series of interrelated acts" as that phrase is used to define a related claim which would be treated as a "single claim" under the American Empire policy. The Verdugo complaint asserted that American Empire's failure to defend Verdugo in the McLeod action breached its contractual obligation to do so.

The trial court's order granting summary judgment stated that Verdugo conceded that the American Empire policy expired March 1, 1991, and that the McLeod action commenced six months later on September 20, 1991, during the Homestead policy period. The trial court further found that the nature of a "claims made" policy mandates the conclusion that the claim was made outside the American Empire policy period. Verdugo argued, however, that the McLeod action was a "claim" made during the policy period because it had similarities to the Minnick action, commenced during the American Empire policy period. The court rejected this argument because the language

governing the *number* of claims does not govern *when* they must be made; even "related" claims *must* be made during the policy period. The policy's insuring clause defined the covered event as a claim made during the policy period. The policy definition of "claim" did not extend coverage to claims made outside the policy period; it merely indicated that the policy treated all interrelated claims made during the policy period as a single claim. Nothing in the "definitions" section of the policy allowed claims to be made outside the policy period.

## ISSUE

One claim against Verdugo was brought during the American Empire policy period. A second claim against Verdugo was brought during the Homestead policy period. This appeal calls upon this court to determine whether American Empire's "claims made" insurance policy issued to Verdugo required American Empire to defend against both claims.

## DISCUSSION

As stated in the "Insuring Agreements," the American Empire policy insures Verdugo against "[l]oss which the Insured shall become legally obligated to pay, from any claim made against the Insured during the Policy Period, by reason of any actual or alleged negligent act, error or omission committed in the rendering or failure to render the Professional Services stated in the Declarations."

The "definitions" portion of the policy states: "Claim shall mean a written demand received by the Insured for money or services, including the service of suit or demand for arbitration against the Insured. Claims arising out of the same act or out of a series of interrelated acts shall be considered as arising out of one negligent act, error or omission and shall be treated as a single claim."

The American Empire policy is a "claims made" policy. ■ "A 'claims made' policy is one whereby the carrier agrees to assume liability for any errors, including those made prior to the inception of the policy[,] as long as a claim is made during the policy period. On the other hand, an 'occurrence' policy provides coverage for any acts or omissions that arise during the policy period[,] even though the claim is made after the policy has expired." (*Chamberlin* v. *Smith* (1977) 72 Cal.App.3d 835, 845, fn. 5 [140 Cal.Rptr. 493].)

Seeking to reduce exposure to an unpredictable and lengthy "tail" of lawsuits brought long after an "occurrence" policy period, insurance carriers developed "claims made" policies. Such policies limit an insurer's risk by restricting coverage to the policy in effect when a claim is asserted against the insured, without regard to the timing of the damage or injury. This restriction allows the carrier to establish reserves despite inflation, upward-spiraling jury awards, or enlarged tort liability occurring after the policy period. "Claims made" policies permit insurers to predict more accurately both the limits of their exposure and the premium needed to accommodate the risk undertaken. (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 688-689 [42 Cal.Rptr.2d 324, 897 P.2d 1].)

"The hallmark of a 'claims made' policy is that exposure for claims terminates with expiration or termination of the policy, thereby providing certainty in gauging potential liability which in turn leads to more accurate calculation of reserves and premiums." (*Helfand* v. *National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 869, 888 [13 Cal.Rptr.2d 295].) "Claims made" policies benefit insureds by making coverage cheaper and more widely available. (*Ibid.*; *Pacific Employers Ins. Co.* v. *Superior Court* (1990) 221 Cal.App.3d 1348, 1358-1359 [270 Cal.Rptr. 779].)

Thus a "claims made" policy limits coverage to claims made against the insured during the policy period. Coverage does not depend on when the "actual or alleged negligent act, error or omission" occurs. Instead, coverage depends on when the claim is made against the insured. "Under a 'claims-made' policy, the insurer generally is responsible for loss resulting from claims made during the policy period no matter when the liability-generating event took place." (*Helfand* v. *National Union Fire Ins. Co., supra,* 10 Cal.App.4th at p. 885, fn. 8.) An "occurrence" policy may be triggered in one of several ways. (*Montrose Chemical Corp.* v. *Admiral Ins. Co., supra,* 10 Cal.4th at p. 673.) The event that triggers a "claims made" policy, by contrast, is transmission of notice of the claim. (*Pacific Employers Ins. Co.* v. *Superior Court, supra,* 221 Cal.App.3d at p. 1358.)

■ Homestead relies on a portion of the American Empire policy definition of a "claim:" "Claims arising out of the same act or out of a series of interrelated acts shall be considered as arising out of one negligent act, error or omission and shall be treated as a single claim." Homestead argues that this definition permits the interpretation that once a claim is made arising from a negligent act, error, or omission, any interrelated later claims relate back to the initial claim, regardless of when the later claims were made. Homestead therefore reasons that any of the related claims arising out of the

actions of Verdugo and its president, Lois McCauley, in their dealing with Minnick codefendants should be considered as arising out of one negligent act, error, or omission first reported to American Empire with the filing of the Minnick lawsuit; that the McLeod action is inextricably linked to the Minnick lawsuit; and that the McLeod and Minnick lawsuits should be treated as a single claim that triggered American Empire's duty to defend.

Thus does Homestead seek to stretch the tail of the American Empire policy to include a claim made against Verdugo during the Homestead policy period. Lengthening the policy tail, however, is the very thing "claims made" coverage exists to prevent. To so interpret the policy coverage would be to rewrite the policy to extend coverage at no added cost to the insured (*Helfand* v. *National Union Fire Ins. Co.*, *supra*, 10 Cal.App.4th at p. 888), or, as in this case, to shift liability from one insurer to another despite clear contractual terms.

The quoted definition of "claim" does not exist to make it possible for claims submitted during different policy periods to merge into a single claim. Instead, the quoted definition of "claim" exists to clarify other policy provisions relating to the "deductible amount" and "limits of liability" in the "declarations" section of the policy. (See the discussion in *Bay Cities Paving & Grading, Inc.* v. *Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 861-862 [21 Cal.Rptr.2d 691, 855 P.2d 1263].)

This policy definition of "claim" remains subordinate to, and does not vary, the requirement in the insuring agreements that American Empire agrees to pay for loss which the insured shall become legally obligated to pay "from any claim made against the Insured *during the Policy Period*[.]" (Italics added.) To be covered by the policy, a claim—or a group or series of claims "treated as a single claim"—must still be made "during the Policy Period."

To interpret this language otherwise would be to forego the benefits of the "claims made" policy to both insurer and insured. The insurer has the right to limit policy coverage, so long as that limitation conforms to the law and is not contrary to public policy. (*National Auto. & Casualty Ins. Co.* v. *Stewart* (1990) 223 Cal.App.3d 452, 461 [272 Cal.Rptr. 625].) "Claims made" policies exist to confine coverage to claims made during the policy period. To extend coverage to claims made against the insured after the policy period would contradict the purpose of claims made policies, impair the well documented "social utility" of these policies, and would add a term

to the policy for which the parties had not bargained. (*Pacific Employers Ins. Co.* v. *Superior Court, supra,* 221 Cal.App.3d at pp. 1358-1359.)

The policy's "notice of loss or circumstances" clause reinforces the confinement of coverage to the policy period. It states in relevant part:

"The Insured shall, as a condition precedent to any right to coverage under this insurance, give to the Company notice in writing as soon as practicable:

"(a) of any claim made against them during the Policy Period;

"(b) of any circumstance which may subsequently give rise to a claim for which coverage is provided hereunder. If any claim for which coverage is provided hereunder is subsequently made against the Insured arising out of the circumstances reported under this subdivision (b), it shall be deemed to have been made during the Policy Period[.]" This clause reiterates that coverage arises only from a claim made against the insured "during the Policy Period," with one exception. As a "condition precedent to any right to coverage," the insured has the responsibility to give written notice to the insurer "of any circumstance which *may subsequently* give rise to a claim." (Italics added.) Only if the insured gives that notice, and a claim is made later against the insured, will the policy "deem" that claim to have been made "during the Policy Period."[1] This is the only exception to "claims made" coverage; the presence of this exception supports the conclusion that it is the only exception to the coverage contemplated by the contract.

Our conclusion makes it unnecessary to analyze whether the Minnick and McLeod complaints arose from "interrelated acts." The indemnification clause of the policy requires American Empire to insure Verdugo only against loss from claims made against Verdugo during the policy period. We construe the policy definition of a "claim" to apply to the word "claim" used in the indemnification clause. The policy authorizes multiple claims arising from a series of interrelated acts to be "treated as a single claim." But the insured must still receive notice of those claims during the policy period. If it does not, the policy does not cover such claims. We therefore conclude that American Empire had no duty to defend Verdugo against the McLeod complaint, and affirm the grant of summary judgment in favor of American Empire.

---

[1] See *Helfand* v. *National Union Fire Ins. Co., supra,* 10 Cal.App.4th at pages 888-889, and *Abifadel* v. *Cigna Ins. Co.* (1992) 8 Cal.App.4th 145, 161 [9 Cal.Rptr.2d 910].

## DISPOSITION

The judgment is affirmed. Costs in favor of respondent.

Croskey, Acting P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied May 15, 1996.