Smith, Blocker Lowther, P.C. ("Smith, Blocker"), sued Attorneys Insurance Mutual of Alabama, Inc. ("Attorneys Mutual"), its professional liability insurance carrier, seeking *Page 868 
a judgment declaring that Attorneys Mutual had a duty to defend and indemnify it in regard to a malpractice claim. Smith, Blocker also sought damages, alleging that Attorneys Mutual had in bad faith refused to provide coverage under the policy. The trial court entered a summary judgment in favor of Smith, Blocker as to the question of the insurance coverage claim and in favor of Attorneys Mutual on the bad faith claim. Both parties appealed.
On a motion for summary judgment, the burden is initially on the movant to make a prima facie showing that there is no genuine issue of material fact (i.e., that there is no dispute as to any material fact) and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; McClendon v. Mountain Top Indoor Flea Market,Inc., 601 So.2d 957 (Ala. 1992); Elgin v. Alfa, Corp.,598 So.2d 807 (Ala. 1992). "The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact." McClendon, at 958; Elgin, at 810-11.
Rule 56 must be read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). On an appeal from a summary judgment, this Court reviews the record in a light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Wilma Corp. v.Fleming Foods of Alabama, 613 So.2d 359 (Ala. 1993).
W. Wheeler Smith, a partner in Smith, Blocker, was employed to form a Subchapter S corporation for B.R.E. Associates, Inc. ("BRE"), and to file the necessary documentation with the Internal Revenue Service. In December 1992, Smith formed the corporation, prepared the Subchapter S election, and secured the necessary signatures to obtain Subchapter S tax treatment for the corporation. However, he failed to file the Subchapter S election by March 15, 1993, as required by the Internal Revenue Service.
In October 1993, BRE made a demand upon Smith for $12,060 for additional income tax that was due because of his failure to file the Subchapter S election. On November 10, 1993, rather than reporting the claim to Attorneys Mutual, Smith, Blocker paid BRE directly for the additional income tax. Smith, Blocker believed that the matter had ended, but failed to obtain a release from BRE.
However, on September 26, 1994, some 10 months later, BRE made an additional demand upon Smith, based on his failure to properly file the Subchapter S election form, for $270,000; this claim was based upon BRE's discovery that it would also be liable for additional capital gains tax on the sale of real estate BRE was attempting to sell. The following day, Smith, Blocker notified Attorneys Mutual of BRE's claim and also informed it of the previous payment it had made to BRE. On December 16, 1994, after conducting an investigation into the claim, Attorneys Mutual denied coverage for the claim based upon Smith, Blocker's failure to give timely notice of the "omission" by Smith discovered by BRE in 1993. Attorneys Mutual contends that when BRE notified Smith, Blocker of the "omission" in 1993, Smith, Blocker was required to give notice. Therefore, because Smith, Blocker waited until BRE made an additional demand in 1994, Attorneys Mutual contends that Smith, Blocker failed to satisfy the condition precedent in the policy requiring Smith, Blocker to give timely notice of a claim.
The trial court disagreed, holding (1) that because the policy was a "claims made" policy rather than an "occurrence" policy, Smith, Blocker was allowed to pay the first claim at its own personal cost and (2) that Smith, Blocker gave prompt notice of the second claim. Therefore, the trial court held that Attorneys Mutual was required to defend *Page 869 
and indemnify Smith, Blocker for BRE's second claim.
The Attorneys Mutual policy is a "claims made" policy; by such a carrier agrees to assume liability for any errors, including those made before the inception of the policy, as long as the claim is made during the policy period. On the other hand, an "occurrence" policy provides coverage for any acts or omissions that arise during the policy period, even though the claim is made after the policy has expired.Homestead Ins. Co. v. American Empire Surplus Lines Ins. Co.,44 Cal.App.4th 1297, 52 Cal.Rptr.2d 268 (1996).
In order to reduce exposure to an unpredictable and perhaps lengthy "tail" of lawsuits brought long after an "occurrence" policy period has ended, insurance carriers developed "claims made" policies. Such policies limit an insurer's risk by restricting coverage to the policy in effect when a claim is asserted against the insured, without regard to the timing of the damage or injury. This restriction allows the carrier to establish reserves despite inflation, upward-spiraling jury awards, or enlarged tort liability occurring after the policy period. "Claims made" policies permit insurers to predict more accurately both the limits of their exposure and the premium needed to accommodate the risk undertaken.Homestead, supra.
The hallmark of a "claims made" policy is that exposure for claims terminates with the expiration or termination of the policy, thereby providing certainty in gauging potential liability; this certainty in turn leads to more accurate calculation of reserves and premiums. "Claims made" policies benefit insureds by making coverage cheaper and more widely available. Homestead, supra.
Thus, a "claims made" policy limits coverage to claims made against the insured during the policy period. Coverage does not depend on when the "actual or alleged negligent act, error or omission" occurs. Instead, coverage depends on when the claim is made against the insured. Under a "claims made" policy, the insurer generally is responsible for loss resulting from claims made during the policy period, no matter when the liability-generating event took place. An "occurrence" policy may be triggered in one of several ways. The event that triggers a "claims made" policy, by contrast, is transmission of notice of the claim. Homestead, supra.
Attorneys Mutual relies on a portion of the policy appearing in the "limits of liability" section, which provides for multiple insureds, claims, and claimants:
 "The inclusion herein of more than one insured or the making of claims or the bringing of suits by more than one person or organization shall not operate to increase the Company's limit of liability. Two or more claims arising out of a single act, error, omission or personal injury or a series of related acts, errors, omissions or personal injuries shall be treated as a single claim. All such claims, whenever made, shall be considered first made during the policy period or extended reporting endorsement period in which the earliest claim arising out of such act, error, omission or personal injury was first made, and all such claims shall be subject to the same limit of liability."
(Emphasis added.)
Attorneys Mutual argues that the policy is plain and unambiguous and that this portion of the policy means that all claims arising out of a single act, error, or omission shall be treated as a single claim.
Because this Court has never addressed the issue presented here, Attorneys Mutual relies on Bay Cities Paving Grading,Inc. v. Lawyers' Mutual Ins. Co., 5 Cal.4th 854, 855 P.2d 1263,21 Cal.Rptr.2d 691 (1993). In Bay Cities, a general contractor retained an attorney to represent it in connection with construction work it was performing. The attorney filed a mechanic's lien on behalf of Bay Cities. However, he did not serve a "stop notice" on the construction lenders and did not timely seek to foreclose the mechanic's lien, i.e., he committed two separate acts of negligence. Bay Cities made a demand on the attorney, stating that it was asserting "two separate claims," but sought payment of a single amount. Therefore, Bay Cities made a single "demand for money against *Page 870 
the Insured." The trial court held that there were two separate acts of legal malpractice and, therefore, that the limits of liability were doubled. Lawyers Mutual appealed, contending that there was but one claim being asserted and, thus, that the limits of liability should not be doubled. The California Supreme Court held that the two errors were related and arose out of a specific transaction, the collection of a single debt. Therefore, it held, there was but one claim for purposes of applying the policy provision limiting coverage for claims arising out of a series of related acts, errors, or omissions.
Attorneys Mutual contends that Bay Cities is dispositive of the issue presented in this case. We disagree. Bay Cities was attempting to create two separate claims in order to double the policy limits. In the present case, Smith, Blocker paid the first demand for money at its own personal cost, as the policy permits it to do. Smith, Blocker has not asked Attorneys Mutual to reimburse it for the first claim, nor is it attempting to portray BRE's demands as two separate claims in an attempt to double its policy limits.
Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions. Hall v. American IndemnityGroup, 648 So.2d 556 (Ala. 1994). The policy clearly states that it is a claims-made policy and that coverage is limited to liability for those claims that are made against the insured and are reported to the company during the policy period. Furthermore, the policy states that the insured shall, as soon as practicable, give Attorneys Mutual written notice of any claim made against the insured. The policy also states that the insured shall not, except at personal cost, make any payment, admit any liability, or settle any claims, without the written consent of Attorneys Mutual. Finally, the policy defines a claim as "[a] demand received by the Insured for money."
Smith, Blocker received from BRE two separate demands for money. It chose to pay the first demand at its own personal cost. However, it chose to notify Attorneys Mutual when presented with the second demand. Despite the language in the limits of liability section, and reading that language in the context of all the other provisions of the policy, we find it clear that this is a "claims made" policy and that it is irrelevant whether the two demands arose from one "omission."
Therefore, the trial court correctly entered that portion of the summary judgment in favor of Smith, Blocker requiring Attorneys Mutual to defend and indemnify Smith, Blocker in the malpractice claim.
In its cross-appeal, Smith, Blocker contends that the trial court erred in entering that portion of the summary judgment in favor of Attorneys Mutual on the bad faith claim.
This Court created the tort of bad faith failure to pay an insurance claim in Chavers v. National Security Fire CasualtyCo., 405 So.2d 1, 7 (Ala. 1981), stating:
 "[A]n actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either '(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.' "
Later, in National Security Fire Casualty Co. v. Bowen,417 So.2d 179, 183 (Ala. 1982), this Court held:
 "No lawful basis 'means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, Ala., 405 So.2d 916 (1981). When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law."
This Court has held that the plaintiff must go beyond a mere showing of nonpayment. Instead, the plaintiff must prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute — that the insurer, with no legal or factual defense to the claim, refused to pay it. Bush v.Alabama Farm Bureau Mut. Casualty Ins. Co., 576 So.2d 175
(Ala. 1991).
In National Savings Life Ins. Co. v. Dutton, 419 So.2d 1357
(Ala. 1982), this Court *Page 871 
emphasized the heavy burden a plaintiff bears in a bad faith case. In the normal case, in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof must show that the plaintiff is entitled to a directed verdict on the contract claim. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim, the tort claim must fail and should not be submitted to the jury.[1] Dutton, 419 So.2d at 1362. The characterization of a plaintiff's burden of proof as a "heavy" one was no doubt prompted by the Court's previous recognition in Chavers of the necessity for allowing insurers a broad range of freedom to thoroughly evaluate claims and to decline payment in nonmeritorious cases.
After thoroughly reviewing the record, we find no evidence that Attorneys Mutual denied Smith, Blocker's claim in bad faith. The record reflects that Attorneys Mutual attempted to determine, legitimately and in good faith, whether there had been two separate claims, understanding that if there had been two separate claims then its policy would provide coverage for the second one. Although Attorneys Mutual incorrectly determined that there was but one claim arising from one occurrence, we cannot say that it acted in bad faith in making that determination and that there was no reasonable ground for dispute.
Therefore, the trial court correctly entered the summary judgment in favor of Attorneys Mutual on the bad faith claim.
The judgment of the trial court is affirmed, both as to the appeal and as to the cross appeal.
1950420 — AFFIRMED.
1950511 — AFFIRMED.
HOOPER, C.J., and ALMON, HOUSTON, and BUTTS, JJ., concur.
[1] This is known as the "directed verdict on the contract claim" standard.