[No. B195047. Second Dist., Div. Three. June 16, 2008.]

WESTREC MARINA MANAGEMENT, INC., Plaintiff and Appellant, v. ARROWOOD INDEMNITY COMPANY, Defendant and Respondent.

**COUNSEL**

Nemecek & Cole, Michael McCarthy, Tommy Q. Gallardo; and Thomas J. Ready for Plaintiff and Appellant.

Musick, Peeler & Garrett, David A. Tartaglio and Teresa Cho for Defendant and Respondent.

OPINION

**CROSKEY, Acting P. J.**—Westrec Marina Management, Inc. (Westrec), appeals a judgment denying relief on its complaint against its liability insurer, Arrowood Indemnity Company (Arrowood), after a nonjury trial. Arrowood refused to provide a defense in an action against Westrec on the ground that Westrec had failed to timely report the claim as required under the terms of the two successive policies issued by Arrowood. Westrec contends it timely reported the claim and the trial court's conclusion to the contrary was error. We hold that the court correctly decided that a letter from the third party claimant's attorney to Westrec was a "claim" within the meaning of the policies, that the later action filed by the third party claimant constituted the same claim, and that Westrec's failure to timely report the claim after receiving the letter rendered its later notice of claim untimely. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Factual Background*

Arrowood, then known as Royal Indemnity Company, issued a directors and officers liability insurance policy to Westrec effective from July 1, 2002, to July 1, 2003, and issued a second policy effective from July 1, 2003, to July 1, 2004. Each policy provided coverage for losses incurred in connection with claims first made during the policy period and reported within 30 days after the expiration of the policy.

The policies defined a "claim" as:

"a. a written demand for civil damages or other relief commenced by the Insured's receipt of such demand;

"b. a civil proceeding commenced by the service of a complaint or similar pleading;

"c. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, a formal investigative order or other similar document; or

"d. a criminal proceeding commenced by the Insured's receipt of notice of a grand jury investigation." (Boldface omitted.)

The policies also stated that all claims arising from the same events or series of related facts would be deemed a single claim.[1]

Bette Clark filed a complaint with the Department of Fair Employment and Housing (DFEH) on April 14, 2003, alleging employment discrimination by Westrec and requesting a right-to-sue notice. The DFEH notified Westrec of the complaint and stated that the complaint was closed immediately on April 14, 2003, because the complainant had requested an immediate right-to-sue notice. The DFEH issued a right-to-sue notice on April 15, 2003. Westrec did not notify Arrowood of these events within 30 days after the expiration of the first policy.

Clark's attorney, William Adams, sent a letter to Westrec by facsimile on June 24, 2003. The letter began by stating that Adams represented Clark and that Clark "was subjected [to] constant discriminatory and demeaning treatment by male supervisors based upon her sex." The letter described alleged incidents of discrimination and wrongful termination. It stated further: "As you are no doubt aware, Bette has received Right to Sue letters from the DFEH. I am writing to you to see if Westrec would prefer to attempt to resolve or mediate this matter, or if it will be necessary to file a lawsuit and have a jury decide the outcome. It is often in an employer's best interests to resolve discrimination claims promptly in order to avoid paying statutory attorney's fees which must be awarded by the court should the employee prevail. Those fees alone can exceed $200,000 by the time of trial. [¶] . . . [¶] Before any litigation becomes necessary, however, I believe the Company should first be permitted to do the right thing to promptly rectify the harm caused to Bette in a confidential and discreet manner. If this matter were to be resolved in this manner, there is a second advantage to the Company—one can almost be assured that a prompt resolution will be far less expensive and less time consuming for the Company and its executives." The letter concluded, "I look forward to hearing back from you or your legal counsel." Westrec did not notify Arrowood of the letter within 30 days after the expiration of the first policy.

Clark filed a complaint against Westrec on December 19, 2003, alleging several counts arising from employment discrimination and wrongful termination. Westrec notified Arrowood of the action on January 30, 2004,

---

[1] Specifically, the policies stated: "All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single Claim." (Boldface omitted.)

tendered its defense, and requested indemnity. Arrowood declined to defend or indemnify its insured in a letter dated February 9, 2004. The letter stated that either the complaint to the DFEH or the Adams letter, or both, constituted a "claim" as defined in the policy and that Westrec failed to provide timely notice of the claim.

### 2. Trial Court Proceedings

Westrec filed a complaint against Arrowood and others in August 2005. The first amended complaint filed in November 2005 alleges counts against Arrowood for breach of contract and breach of the implied covenant of good faith and fair dealing. Westrec moved for summary adjudication, seeking to establish a duty to defend. The court denied the motion. Westrec dismissed its count for breach of the implied covenant before trial pursuant to a partial settlement.

The court conducted a nonjury trial on the count for breach of contract, and orally announced its ruling at the conclusion of trial. The court stated that the complaint to the DFEH was not a "claim" within the meaning of the policies, but that the Adams letter was a "claim" because it was a demand for a monetary settlement. The court ordered Westrec to prepare a judgment consistent with its ruling. The court entered a defense judgment on September 15, 2006. Westrec timely appealed the judgment.

## CONTENTIONS

Westrec contends its notice of claim was timely because neither the complaint to the DFEH nor the Adams letter was a "claim" within the meaning of the policies, and even if either of those items was a claim, the Clark lawsuit was a separate claim for which Westrec provided timely notice.

## DISCUSSION

### 1. Standard of Review

Absent a factual dispute, the interpretation of an insurance contract and its application to undisputed facts are questions of law that we review de novo. (*Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 125 [49 Cal.Rptr.2d 567].)

### 2. Rules of Contract Interpretation

We interpret an insurance policy using the same rules of interpretation applicable to other contracts. (*Palmer v. Truck Ins. Exchange* (1999) 21

Cal.4th 1109, 1115 [90 Cal.Rptr.2d 647, 988 P.2d 568].) The mutual intention of the contracting parties at the time the contract was formed governs. (Civ. Code, § 1636; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 [117 Cal.Rptr.2d 220, 41 P.3d 46].) We ascertain that intention solely from the written contract, if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (Civ. Code, §§ 1639, 1647; *Hess, supra,* at p. 524.) We consider the contract as a whole and construe the language in context, rather than interpret a provision in isolation. (Civ. Code, § 1641.) We interpret words in a contract in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage. (*Id.,* § 1644.) If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs. (*Id.,* § 1638.)

### 3. *The Adams Letter Was a "Claim" As Defined in the Policies*

██ The policies define a "claim" to include, "a written demand for civil damages or other relief commenced by the Insured's receipt of such demand." (Boldface omitted.) The policies do not state that a demand must be made in connection with a judicial or administrative proceeding to constitute a claim. The ordinary meaning of a "demand" as used in this context is a request for something under an assertion of right or an insistence on some course of action. (See Webster's 3d New Internat. Dict. (2002) p. 598.) A mere request for an explanation, expression of dissatisfaction, or lodging of a grievance that falls short of such an insistence is not a demand. (*Abifadel v. Cigna Ins. Co.* (1992) 8 Cal.App.4th 145, 160 [9 Cal.Rptr.2d 910] (*Abifadel*); *Hill v. Physicians & Surgeons Exchange* (1990) 225 Cal.App.3d 1, 5–6 [274 Cal.Rptr. 702]; see *Hoyt v. St. Paul Fire and Marine Ins. Co.* (9th Cir. 1979) 607 F.2d 864, 866.)

The Adams letter stated that Clark had been subjected to employment discrimination and wrongful termination and that she had received a right-to-sue notice from the DFEH. It stated that Westrec might prefer "to resolve or mediate this matter" and "to promptly rectify the harm" rather than suffer the expense of litigation. Obtaining a right-to-sue notice is a necessary predicate to the filing of an action under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.). (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) The Adams letter clearly expressed Clark's intent to sue Westrec for employment discrimination if an appropriate settlement could not be reached.

We construe the letter as a settlement demand seeking monetary compensation for the alleged wrongdoing. Although the letter did not expressly demand payment or refer to any specific amount, its meaning was clear that, absent some form of negotiated compensation, Clark would commence a lawsuit against Westrec. The attorney's request for compensation while threatening litigation was a "demand," as that word is ordinarily understood. (*Phoenix Ins. Co. v. Sukut Construction Co.* (1982) 136 Cal.App.3d 673, 677–678 [186 Cal.Rptr. 513].) In *Phoenix Ins.*, a client asked his attorney to work without pay to correct a problem with a mechanics lien that the attorney had drafted. The policy did not define the term "claim." Relying on the ordinary meaning of that term as "a demand for something as a right, or as due," we held that the client's request was a sufficient "demand" to constitute a claim. (*Ibid.*) Similarly here, we conclude that the insistence on compensation by way of settlement in lieu of litigation constituted a demand for "civil damages or other relief" within the ordinary meaning of those words. We conclude that the letter was a "written demand for civil damages or other relief" and that the letter therefore was a "claim" as defined in the policies.[2]

The Arrowood policies state that if, during the policy period, the insured first becomes aware of a "circumstance which may reasonably be expected to give rise to a Claim," and promptly notifies the insurer in writing before the expiration date of the policy, any subsequent claim against the insured arising out of the same circumstance will be deemed to be first made during the policy period. Westrec, relying on this language, argues that the Adams letter was merely a "circumstance" within the meaning of this provision and therefore was not an actual "claim." Westrec cites opinions involving insurance policies with other provisions that extended coverage to claims made after the policy period if the insured promptly notified the insured of a threatened or potential claim during the policy period. (*Abifadel, supra*, 8 Cal.App.4th at pp. 149–150 & fn. 2; *Winkler v. National Union Fire Ins. Co.* (9th Cir. 1991) 930 F.2d 1364, 1366.) Those opinions involved policies in which the term "claim" was undefined, but the concept of a threatened or potential claim was described in detail. (*Abifadel, supra*, at pp. 149, 161; *Winkler, supra*, at p. 1366.) *Abifadel* and *Winkler* concluded that a "claim" and a threatened or potential claim were mutually exclusive, and concluded that certain events that did not rise to the level of a "demand" were threatened or potential claims under the policy terms. *Abifadel* and *Winkler* therefore held that those events were not actual claims within the meaning of the policies. (*Abifadel, supra*, at pp. 161, 163–167; *Winkler, supra*, at pp. 1366–1367 & fn. 4.)

---

[2] In light of our conclusion that the Adams letter was a "claim," we need not decide whether the complaint to the DFEH was a "claim."

Here, in contrast, we conclude that the Adams letter was "a written demand for civil damages or other relief" within the meaning of the policy definition, as we have stated. In our view, the provision regarding a "circumstance which may reasonably be expected to give rise to a Claim" does not in any way suggest that a written settlement demand is not a claim.

### 4. *The Lawsuit and the Prior Letter Constituted a Single Claim, and Westrec Failed to Timely Report the Claim*

The Clark lawsuit was a "claim" within the meaning of the policies because it was "a civil proceeding commenced by the service of a complaint or similar pleading." The policies state that all claims arising from the same events "or in any way involving the same or related facts . . . or the same or related series of facts . . ." are deemed a single claim. This provision appears together with four other paragraphs under the heading "LIMIT OF LIABIL-ITY; RETENTION; PAYMENT OF LOSS." (Boldface omitted.) The Clark lawsuit was the litigation that was authorized by the right-to-sue notice and threatened in the Adams letter. The lawsuit was based on and arose from the same events and the same or related series of facts as the prior claim (i.e., the Adams letter). The lawsuit and the letter therefore constituted a single claim that was first made at the time of the Adams letter.

Westrec argues that because the policies define the term "claim" in the disjunctive, each of the four events described in the definition gives rise to a separate claim. Westrec maintains that if the Adams letter or the complaint to the DFEH was a claim, the lawsuit was a separate claim and was first made within the second policy period. Westrec argues further that the "single claim" provision applies to the determination of liability limits and retention amounts, but does not modify the definition of a claim or affect the determination of when a claim was first made or reported. We reject each of these arguments.

The insuring clause states that the insurer will provide coverage only for claims "first made . . . and reported" in accordance with other policy terms. Another provision states that a claim must be "first made" during the policy period and reported within 30 days after the expiration of the policy. The references to claims "*first* made" (italics added) suggest that the same claim can be made more than once. This suggests that two events each constituting a claim under the policy definition, such as "a written demand for civil damages or other relief" followed by "a civil proceeding commenced by the service of a complaint or similar pleading," can constitute a single claim

made more than once. The "single claim" provision confirms this view. That provision (quoted in fn. 1, *ante*) is not expressly limited to only the determination of liability limits and retention amounts. Although the heading under which the "single claim" provision appears does not describe the effect of the provision on the determination of when a claim was first made or reported, the absence of a fully descriptive heading does not restrict the plain meaning of the provision. (*Coit v. Jefferson Standard Life Ins. Co.* (1946) 28 Cal.2d 1, 11 [168 P.2d 163] [enforced the explicit language of a policy exclusion despite an arguably inaccurate caption]; cf. *People v. Garfield* (1985) 40 Cal.3d 192, 199–200 [219 Cal.Rptr. 196, 707 P.2d 258] [stated that a chapter heading by the Legislature may be a " 'useful guide' " to statutory interpretation but is not controlling].)

*Homestead Ins. Co. v. American Empire Surplus Lines Ins. Co.* (1996) 44 Cal.App.4th 1297 [52 Cal.Rptr.2d 268] (*Homestead*), cited by Westrec, is not on point. *Homestead* involved a cross-complaint between two insurers, each of which had issued a "claims made" policy to the same insured, an escrow company, in consecutive years. (*Id.* at p. 1300.) John and Betty Minnick filed a complaint against the insured and others during the term of a policy issued by American Empire Surplus Lines Insurance Company (American Empire). The Minnick action arose from a commercial real property sales transaction. Carey and Beverly McLeod and other plaintiffs later filed a complaint against the insured, the Minnicks, and others during the term of a policy issued by Homestead Insurance Company (Homestead), alleging that the defendants had defrauded investors in a series of transactions. (*Id.* at pp. 1301–1302.) The insured and Homestead alleged that the McLeod action was a claim made during the prior policy period because the Minnick and McLeod actions arose from "a 'series of interrelated acts' " and therefore were " 'treated as a single claim' " under the terms of a provision in the American Empire policy. (*Id.* at pp. 1302, 1304–1305.)

In *Homestead*, we noted that the purpose of a "claims made" policy, as distinguished from an "occurrence" policy, is to limit the insurer's risk to claims made during the policy period regardless of when the injury or its cause occurred. This reduces the insurer's potential liability on a policy and results in a lower premium for the insured. (*Homestead, supra*, 44 Cal.App.4th at p. 1304.) We concluded that the McCleod action was a claim made after the American Empire policy period and that coverage under the American Empire policy did not extend to claims made after the policy period. (*Id.* at p. 1305.) We stated that the "single claim" provision did not cause claims made during different policy periods to merge into a single claim, and did not

shift liability from one insurer to another. (*Ibid.*) We stated further that a claim, or multiple claims treated as a single claim, must be made during the policy period to trigger coverage. (*Ibid.*)

*Homestead, supra,* 44 Cal.App.4th 1297, did not address the effect of a "single claim" provision on a provision limiting coverage to claims *"first made"* (italics added) during the policy period. In contrast to the situation in *Homestead,* the effect of our application of the "single claim" provision here is not to extend coverage to a claim made after the policy period, contrary to the purpose of a "claims made" policy, or to shift liability from one insurer to another. Rather, application of the "single claim" provision in these circumstances gives effect to the express limitation of coverage to claims "first made" during the policy period.

*Helfand v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 869 [13 Cal.Rptr.2d 295] also is not on point. *Helfand* involved a policy provision stating that losses arising from the same or interrelated acts were considered " 'a single loss.' " (*Id.* at p. 891, fn. 12.) The provision appeared in a clause explaining the calculation of retention amounts for each loss. *Helfand* stated, "[i]n context it is clear that the interrelated acts provision pertains solely to calculation of the retention amount to be borne by the insureds and not to the issue of when loss is incurred for purposes of applying the annual limit of liability for a particular policy year." (*Ibid.*) Thus, *Helfand* concerned the effect of a "single loss" provision on the allocation of losses to different policy years for purposes of applying the annual liability limits. *Helfand* did not consider the effect of a "single claim" provision on a provision limiting coverage to claims "first made" during the policy period.

██ The Clark lawsuit and the Adams letter constituted a single claim that was first made at the time of the Adams letter, as we have stated. Westrec received the Adams letter during the first policy period but failed to notify Arrowood of the claim within 30 days after the expiration of the policy, as required. Westrec's subsequent notice of the lawsuit during the second policy period concerned the same claim and therefore was untimely.

Westrec is not entitled to coverage under the policies because it failed to timely report the claim. The trial court properly entered judgment in favor of Arrowood.

## DISPOSITION

The judgment is affirmed. Arrowood is entitled to recover its costs on appeal.

Kitching, J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 10, 2008, S165329.