MURDOCK, Justice
(dissenting).
I disagree with the interpretation of § 12.2.1.2 of the contract set out in the main opinion and the corollary holding that § 5.3 does not apply in this case.
The language of § 12.2.1.2 of the contract bears repeating:
“12.2.1.2 The Contractor shall incur no further obligations in connection with the Work and the Contractor shall stop Work when such termination becomes effective. The Contractor shall also terminate outstanding orders and subcontracts. The Contractor shall settle the liabilities and claims arising out of the termination of subcontracts and orders. The Owner may direct the Contractor to assign the Contractor’s right, title and *187 interest under terminated orders of Subcontracts to the Owner or its designee.”
(Emphasis added.)
The first clause of the first sentence of this section is not a provision relieving the contractor of any liability or responsibility under the contract; rather, it is a directive to the contractor that, if and when the owner invokes its right to terminate the contract for reasons other than for cause, the contractor is not to incur any “further” obligations beyond those to which it has already committed itself. In other words, it is a command to the contractor to cease and desist from entering into any new or additional commitments to subcontractors and suppliers. This, in my view, is simply a plain reading of the language in this clause.
“ ‘General contract law requires a court to enforce an unambiguous, lawful contract, as it is written. P & S Business, Inc. v. South Central Bell Telephone Co., 466 So.2d 928, 931 (Ala.1985). See also McDonald v. U.S. Die Casting & Development Co., 541 So.2d 1064 (Ala.1989). A court may not make a new contract for the parties or rewrite their contract under the guise of construing it. Estes v. Monk, 464 So.2d 103 (Ala.Civ.App.1985)....’”
Dawkins v. Walker, 794 So.2d 333, 339 (Ala.2001) (quoting Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 35-36 (Ala.1998)). Furthermore, it is a reading of this language that is in pari materia with the remainder of the first sentence, which commands that “the Contractor shall stop Work” upon a termination for convenience. See Celtic Life Ins. Co. v. McLendon, 814 So.2d 222, 224 (Ala.2001) (noting that contracts “ ‘are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions’ ” (quoting Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C., 703 So.2d 866, 870 (Ala.1996) (emphasis omitted))); Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala.1995) (“Terms of a written instrument should be construed in pari mate-ria. ...”). Similarly, it is a reading that is consistent with the next sentence of § 12.2.1.2, which requires the contractor to “terminate outstanding order and subcontracts.” See id.
Consistent with this understanding, I see nothing that prohibits the Public Building Authority of the City of Huntsville (“the PBA”) from terminating the contract “for convenience,” subsequently discovering or making a determination that a termination for cause is warranted, and then acting on that discovery or determination. A fortiori, the PBA could terminate for convenience — thereby halting any “further” work by the contractor— while expressly reserving any claims against the contractor for defective work or, as it chose to do here, expressly reserving its right to thereafter assess the work that had been done by the contractor and subsequently terminate for cause if a termination for cause is found to be warranted.
I also disagree with the treatment as tort claims claims that are merely breach-of-contract claims against the subcontractors and the majority’s decision not to apply the economic-loss rule to those claims.