Filed 8/20/20  3558 Sagunto Street, LLC v. County of Santa Barbara CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| 3558 SAGUNTO STREET, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF SANTA BARBARA,<br><br>    Defendant and Respondent. | 2d Civil No. B297383<br>(Super. Ct. No. 15CV00606)<br>(Santa Barbara County) |

Appellant 3558 Sagunto Street, LLC is the owner of property at 3558 Sagunto Street in Santa Ynez (Sagunto Property).  After a dispute with an adjoining property owner (Edison Property) regarding parking spaces, appellant placed "reserved" signs on and blocked access to parking spaces located in front of the Sagunto Property.

The County of Santa Barbara (County) issued a notice of violation to appellant for restricting parking in violation of the Development Plan applicable to the property (88-DP-14)

(Development Plan).  Appellant filed a complaint alleging the Development Plan did not apply to the Sagunto Property.  The trial court found otherwise and entered judgment in favor of the County.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

Tom and Joan Bohlinger (Bohlingers) owned the Sagunto and Edison Properties.  In 1977, they built a commercial building on the Sagunto Property, leaving the Edison Property undeveloped.  In 1988, the Bohlingers submitted an application for approval of the Development Plan.  The Development Plan included "facelifting the exterior of the existing building" on the Sagunto Property "and the addition of 6,040 square feet of new commercial space" on the Edison Property.  The application noted there were 11 existing parking spaces, with a plan to build 11 more, for a total of 22 onsite parking spaces.

In July 1988, the County's Planning Commission approved the Development Plan with conditions, including the following:  "The use of the property, size, shape, arrangement, and location of the buildings, walkways, parking areas, and landscaped areas shall be developed in substantial conformity with the approved development plan marked Planning Commission [Attachment] A . . . Substantial conformity shall be determined by the Director of the Resource Management Department.  In the event of disagreement, such a determination shall be made by the Planning Commission."  Attachment A was a "Site Plan and Ground Floor Plan," which depicted the project site incorporating both the Sagunto and the Edison Properties, including 22 parking spaces.

In 1996, the Bohlingers recorded a Declaration of Covenants, Conditions and Restrictions Concerning Private

2

Reciprocal Parking (CC&Rs). The purpose of the CC&Rs was to "provide for reciprocal parking on each parcel for the benefit of both improved legal parcels." The CC&Rs identified the property as "two (2) contiguous legal parcels, each containing parking areas, . . . with all parking spaces adequate in size per the Development Plan by the County." The CC&Rs identified the "contiguous parcels" by the Sagunto and Edison Properties' Assessor's Parcel Number (APN). The CC&Rs stated that "no reserved parking or hedge, fence, wall or similar barrier may be placed, installed or constructed on either parcel if the reserved parking or barrier would block or otherwise interfere with the primary objective of [the CC&Rs] to provide full reciprocal parking." The CC&Rs were to "run[] with the land" and were "binding on the successor owners thereof."

In 1996, the Bohlingers sold the Sagunto Property to Jon and Kathryn (Bowens). The Bowens recorded a Notice of Consent to Use Land. The notice stated that "Bohlinger developed and improved both [the Sagunto and Edison] properties generally conforming to a Development Plan (88-DP-14) approved by the County of Santa Barbara on July 21, 1988."

In 2007, appellant purchased the Sagunto Property. At the time of the purchase, the title report referenced both the CC&Rs and the Notice of Consent to Use Land as "exceptions" to title.

In 2008, appellant installed "reserved" signs on parking spaces on the Sagunto Property. In 2013, it blocked access to the parking spaces that were marked "reserved" on the Sagunto Property.

In 2015, County officials sent a Notice of Violation to the owners of the Sagunto and Edison Properties, stating that the

3

"chains/barriers . . . placed in front of" parking spaces on the Sagunto Property violated the Development Plan and the County Land Use and Development Code. The Notice of Violation noted that the "investigation revealed that [the Edison Property] was included in the approved [Attachment A] which depicts the boundaries of [the Sagunto Property] and [the Edison Property] and incorporates their combined area into a single development." "The alteration of the approved parking configuration and the loss or the selective availability of parking spaces violated the conditions of the operating Development Plan."

### *Superior Court Proceedings*

Appellant filed a complaint against the County for declaratory and injunctive relief. It alleged that the Development Plan did not apply to the Sagunto Property. It sought a "declaratory order that [the County] may not enforce the development plan against [appellant] and an injunction prohibiting [the County] from enforcing the development plan against [appellant]."

The County filed a demurrer, arguing that appellant did not exhaust its administrative remedies and there was no final order or decision with respect to the Notice of Violation. The trial court stayed the superior court case until the County completed the administrative process.

In April 2016, the County filed a Notice of Determination, finding that the Development Plan applied to both the Sagunto and Edison Properties and that both properties were in violation of the Development Plan's parking requirements. The County imposed a $300 fine. Appellant appealed the Notice of Determination to the Planning and Development Director. Following a hearing, the hearing

4

examiner found that the Development Plan applied to the Sagunto Property. The examiner found that a review of the Development Plan files "clearly include the Sagunto Property within the permit limits."

Appellant filed a first amended complaint which added a cause of action challenging the administrative decision. This cause of action was bifurcated from the remaining causes of action for declaratory and injunctive relief.

The trial court conducted a de novo review of the final administrative decision pursuant to Government Code section 53069.4. It determined that the Development Plan applied to the Sagunto Property. The court found the administrative record "clearly establishes that the site plan labeled 'Attachment A' to the Development Plan supports the applicants' intent that the 'Bohlinger Commercial Addition' encompassed both [the Sagunto and Edison Properties]." Moreover, in light of the "transactional history of [the] adjoining parcels," the court found that, "at a minimum, constructive notice pursuant to Civil Code [section] 1213, has been provided to subsequent purchasers of each of these parcels that Development Plan 88-DP-14 and the conditions contained within it, apply to both parcels." The court noted that the Notice of Consent to Use Land and the CC&Rs referenced the Development Plan, and the title report listed these two documents as "exceptions" to the Sagunto Property title.

Appellant subsequently filed a second amended complaint. The parties stipulated that the first cause of action regarding the administrative decision "had already been decided," but was included again in the second amended complaint to preserve "appellate rights" on that cause of action.

5

Appellant also added a fourth cause of action for inverse condemnation against the County and the owners of the Edison Property. It alleged that the County "effectively approved Edison's over-leasing" of parking spaces when the County ruled that appellant violated the Development Plan.

The County demurred to the declaratory relief, injunctive relief, and inverse condemnation causes of action. The trial court sustained the demurrer without leave to amend. It found there was no "taking" to support the inverse condemnation cause of action. The demurrer to the declaratory and injunctive relief causes of action were "sustained on the ground that those causes of action fail with the substantive causes of action for [the appeal of the administrative decision] and Inverse Condemnation." The court entered final judgment in favor of the County on all causes of action.

## DISCUSSION

### *Administrative Decision*

Sagunto contends the trial court erred when it upheld the County's administrative decision that the Development Plan applied to the Sagunto Property. We disagree.

Following a final administrative decision, a party "may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo, except that the contents of the local agency's files shall be received into evidence." (Gov. Code, § 53069.4, subd. (b).) In interpreting the Development Plan, we apply the same standard of review employed in interpreting contracts and review de novo. (See *Bear Creek Planning Committee v. Ferwerda* (2011) 193 Cal.App.4th 1178, 1183; *National City Police Officers' Assn. v. City of National City* (2001) 87 Cal.App.4th 1274, 1278 (*National City*).)

6

In interpreting the Development Plan, we ascertain the intent of the parties as it existed at the time the plan was approved. (See *National City*, *supra*, 87 Cal.App.4th at p. 1279.) We first look to the plain language of the Development Plan and the documents related to its approval. We consider these documents "as a whole and construe the language in the context, rather than interpret a provision in isolation." (*Westrec Marina Management, Inc. v. Arrowood Indemnity Co.* (2008) 163 Cal.App.4th 1387, 1392 (*Westrec*).)

Here, the plain language of both the Development Plan and the approval documents show that the County and the Bohlingers intended the plan to apply to both properties. Bohlingers' application for the Development Plan shows this intent. (*Sports Arenas Properties, Inc. v. City of San Diego* (1985) 40 Cal.3d 808, 815-816 [a permit must be interpreted "in light of the application for it"].) In the application, the Bohlingers explained the Development Plan consisted of "facelifting the exterior of the building" on the Sagunto Property and "the addition of 6,040 square feet of new commercial space" on the Edison Property. The Bohlingers submitted statistical information, which included the *combined* square footage of the structures, building coverage, parking, and landscaping for both properties. The application also indicated that there was an "existing commercial building" "on the [Sagunto] property" that would be retained in the Development Plan.

The Planning Commission Staff Report and Recommendation further supports our conclusion. The project description stated that the "applicant is proposing a 6,240 square foot commercial/office addition to an existing 4,000 square foot building." The report stated the Development Plan consisted of

7

total structures of 10,240 square feet and a total area of 20,000 square feet, which is the combined square footage of both properties. The report also stated the Development Plan included 22 parking spaces, which was the combined number of spaces on both properties. The report included Attachment A, which shows both the properties as part of the development site.

The Planning Commission's approval shows that the County intended the Development Plan to incorporate the Sagunto Property. The approval set forth several conditions, including that the "use, size . . . location of buildings, walkways, parking areas . . . shall be developed in substantial conformity with the approved development plan marked [Attachment A]," which included both properties.

Appellant contends the Development Plan did not apply to the Sagunto Property because the documents do not reference the Sagunto Property's APN. But in construing these documents "as a whole," it is apparent that the Bohlingers and the County intended the Development Plan to apply to both properties. (*Westrec*, *supra*, 163 Cal.App.4th at p. 1392.)

Appellant also contends it lacked adequate notice that the Development Plan applied to the Sagunto Property. But, as the trial court properly found, appellant had "constructive notice" when it purchased the property. The title report specifically referenced the CC&Rs and the Notice of Consent to Use Land as "exceptions" to the Sagunto Property title. Both documents indicated that the Development Plan applied to the Sagunto Property.

### *Demurrer*

Appellant contends the trial court erred when it sustained the demurrer without leave to amend the declaratory

8

and injunctive relief and inverse condemnation causes of action. We disagree.

We independently review the order sustaining the demurrer, accepting the truth of material facts properly pleaded but not contentions, deductions, or conclusions of fact or law. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.) A demurrer should be sustained where the complaint fails to allege facts sufficient to state a cause of action, or discloses a defense that would bar recovery. (Code Civ. Proc., § 430.10; *Balikov v. Southern Cal. Gas Co.* (2001) 94 Cal.App.4th 816, 819-820.) "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

The trial court properly sustained the demurrer to the inverse condemnation cause of action because appellant has not shown the County's action constitutes a "taking." For a taking to occur, there must be "an invasion or an appropriation of some valuable property right which the landowner possesses and the invasion or appropriation must directly and specially affect the landowner to his injury." (*Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 119-120; see also *Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 267 (*Golden Gate Water Ski Club*).) ""Regulations regarding and restrictions upon the use of property in an exercise of the police power for an authorized purpose, do not constitute the taking of property without compensation or give rise to constitutional cause for complaint."" [Citation.]" (*Golden Gate Water Ski Club*, at p. 267.)

9

In *Golden Gate Water Ski Club*, *supra*, 165 Cal.App.4th at pages 253-254, the plaintiff built unpermitted structures on property that was designated "open space" for which land use permits were required. Contra Costa County issued a notice of violation and ordered the removal of all structures that were built on the property without permits. (*Id.* at pp. 254-255.) The plaintiff sued Contra Costa County, arguing the abatement order constituted a taking.

The Court of Appeal held that there was no taking because the plaintiff "never had a property right to develop [the property] in violation of [Contra Costa] County's land use requirements." (*Golden Gate Water Ski Club*, *supra*, 165 Cal.App.4th at p. 267.) Thus, Contra Costa County's action to enforce the permit restrictions was not a taking. (*Ibid.*) Similarly, appellant did not have property rights to block access to the parking spaces on the Sagunto and Edison properties in violation of the Development Plan. (*Ibid.*)

Appellant contends the County's action effectively permitted the Edison Property owners to overlease parking and was thus tantamount to a taking. This argument lacks merit. Here, the County enforced the Development Plan, which required 22 unrestricted parking spaces; it did not give the Edison Property owners rights over all the parking spaces. To the extent appellant alleges the County's failure to take an enforcement action against the Edison Property for overleasing constituted a taking, we reject this argument. "[A]*bsence* of the enforcement of a particular restrictive covenant against *another* owner's property" does not amount to "a governmental expropriation of one's *own* property." *(Barrett v. Dawson* (1998) 61 Cal.App.4th 1048, 1054, original italics.)

The trial court properly sustained the demurrer to the declaratory and injunctive relief causes of action. Appellant seeks an order (2) declaring that the "Development Plan does not apply to the Sagunto Property"; and (2) enjoining the County from "taking any action to apply the Development Plan to the Sagunto Property" and "from assessing any fines or taking any other action against [appellant] for having installed the reserved parking signs and chains." But this relief is "wholly derivative" of appellant's other causes of action. In light of our conclusion that the Development Plan applies to the Sagunto Property and that there was no governmental taking, "there are no grounds for granting an injunction or declaratory relief." (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794 (*Ochs*).)[1]

### *Leave to Amend*

Appellant also contends the trial court erred when it did not grant it leave to amend the complaint. We review the court's order for abuse of discretion, "which is demonstrated if there is a reasonable possibility that the pleading court could be cured by amendment." (*Ochs*, *supra*, 115 Cal.App.4th at p. 796.) "The plaintiff has the burden of showing that the pleading can be cured, but may make this showing for the first time on appeal." (*Ibid.*) Appellant has not carried its burden to show that the pleading could be cured by an amendment. The trial court did not abuse its discretion when it denied leave to amend.

---

[1] Appellant's request for judicial notice filed on July 2, 2020, is denied.

11

## DISPOSITION

The judgment is affirmed.  The County shall recover costs on appeal.

NOT TO BE PUBLISHED.


                                   TANGEMAN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

Timothy J. Staffel, Judge

Superior Court County of Santa Barbara

_____

Cappello & Noel, A. Barry Cappello and David L. Cousineau, for Plaintiff and Appellant.

Amber Holderness, Deputy County Counsel, for Defendant and Respondent.