Filed 12/2/20  Lastavich v. Nob Hill Homeowners Assn. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LOUIS LASTAVICH, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> NOB HILL HOMEOWNERS ASSOCIATION et al., <br><br> Defendants and Respondents. | D075466 <br><br><br> (Super. Ct. No. 37-2017-00019472-CU-OR-NC) |

APPEAL from a judgment and postjudgment order of the Superior Court of San Diego County, Ronald Frazier, Judge.  Affirmed.

Curran & Curran, Michael D. Curran and Susan M. Curran; Williams Iagmin and Jon R. Williams, for Plaintiff and Appellant.

Gatzke Dillon & Ballance, Mark J. Dillon and John W. Dillon, for Defendants and Respondents.

Plaintiff Louis Lastavich appeals from the judgment, and a postjudgment award of attorney fees, in favor of defendants Nob Hill Homeowners Association (Nob Hill HOA), Bill Cima (Cima), and Spiro Demis (Demis) (sometimes, Nob Hill HOA, Cima, and Demis are collectively referred

to as defendants).  Lastavich, Cima, and Demis each own a unit in the four-unit Nob Hill condominium complex located in the coastal zone in Carlsbad, California (sometimes, Nob Hill) that is subject to the Nob Hill Declaration of Covenants, Conditions & Restrictions recorded in July 1986 (CC&Rs).

After a bench trial based on a stipulated record without the presentation of oral testimony, the court made a series of findings/rulings including, as relevant to this appeal, that short-term vacation rentals (sometimes, STVR(s)) are not a "business" and therefore, such rentals do not violate the CC&Rs as a whole, and section 3.1 in particular, which section requires each of the units at Nob Hill to "be used as a single family residence and for no other purpose or purposes"; that, while an "owner may receive rental income, the *use* of the property [as a STVR] remains a 'single family residence' " under section 3.1; and that at least since 2005, Lastavich has known that other Nob Hill unit owners have rented their units on a short-term basis.

Among other arguments, Lastavich on appeal contends that the trial court improperly construed the CC&Rs including section 3.1.  He argues the "plain meaning" of the CC&Rs "contemplate residential use by owners, the owners' guests, and the owners' 'tenants,' " but not "transient vacation lodgers"; and further argues use of the Nob Hill units as STVRs involve a "commercial" enterprise prohibited by the unambiguous language of section 3.1.

Defendants in response agree with Lastavich that section 3.1 is unambiguous.  But that's where the parties' agreement ends.

As relevant to this appeal, defendants instead argue that, although Nob Hill owners who rent their units as a STVR receive income, their use of such units remains a "single-family residence" within the meaning of section 3.1;

2

that the uncontroverted evidence shows that such owners "rent their entire units for single-family use within the coastal zone one family at a time, in which their renters and guests inhabit the entire unit and make residential use of each unit by eating, sleeping, cooking, cleaning, and recreating therein," which are all "quintessential uses within a single-family residence"; and that Lastavich's contention section 3.1 and the CC&Rs as whole prohibit expressly or implicitly STVRs would impermissibly require the addition of "new, non-existent language" to the existing CC&Rs.

Exercising our independent review and construing, as we must, the restrictive covenants strictly against Lastavich and in favor of the unencumbered use of the Nob Hill property, we conclude based on the undisputed evidence that the CC&Rs as a whole, and section 3.1 in particular, do not prohibit STVRs in the four-unit Nob Hill condominium complex. As a result of our decision, we deem it unnecessary to reach the other issues raised by the parties. Affirmed.

## BACKGROUND[1]

In 1985, Albert Bovenzi and Sandra Bovenzi purchased the four-unit Nob Hill condominium complex located in the City of Carlsbad (sometimes, City) in a bankruptcy sale. After their purchase, they hired an attorney who prepared the CC&Rs that were recorded in July 1986.

In May 1995, Lastavich purchased his Nob Hill unit. Since at least 1998 through the August 2018 trial, he has continuously resided in the unit. Lastavich's preliminary title report shows the CC&Rs were in his "chain of

---

[1] As noted, the parties stipulated to a bench trial without oral testimony. The material facts are therefore undisputed, as the key issue for purposes of this appeal turns on the interpretation of the CC&Rs, and section 3.1 in particular, and whether STVRs are prohibited under such.

3

title to the property," and he admitted receiving a copy of the CC&Rs and reading them when he purchased his unit.

Defendant Cima declared under penalty of perjury that he and his wife Saundra Cima purchased their Nob Hill unit in May 1998; that between January 2000 to August 2005, they used their unit as a long-term rental; and that beginning in September 2005, they have continuously used their unit as a STVR.

Defendant Cima further declared that since 2005 up to the time Lastavich filed his lawsuit, they have "never had a noise complaint from [their] neighbors"; they "have never had a City code enforcement inquiry or violation for noise disturbances, trash, parking, or any other incident"; they have "never had the police called to the building for short-term vacation rental issues"; they have "visited the Nob Hill complex between the hours of approximately 6:00 p.m. to 10:00 p.m. at least 200 times over the past 12 years, mostly in the summer months, and have never had to tell any tenant to control the noise level"; and they "also strictly prohibit parties and other social gatherings in all of [their] rental contracts." Defendant Cima also declared that Lastavich did not complain about any of the units being used as STVRs until November 2016, more than 11 years after the Cimas began renting their unit on a short-term basis.

Lastavich at his deposition confirmed he has known since about 2005 that the Cimas have been using their Nob Hill unit as a STVR. Lastavich further testified he considered a STVR to be "30 days or less."

In addition to the Cimas, other Nob Hill owners at times have used their units as a STVR. Justin Ferayorni[2] declared under penalty of perjury that he owned a Nob Hill unit from about June 2004 to April 2008; that

_____

2    Ferayorni is not a party in this lawsuit.

4

starting in 2005, he "continuously" used his unit both as a "short-term vacation rental and a long-term rental," until he sold his unit to defendant Demis in about 2008; and that before he began using his unit as a STVR, he reviewed the CC&Rs and determined there was no prohibition of such rentals "either explicitly or by implication."

Ferayorni further declared that he attended a Nob Hill HOA meeting in 2005, and announced during the meeting he had reviewed the CC&Rs and concluded they did not prohibit STVRs; that during the meeting he asked other members in attendance, including Lastavich, if they agreed with his interpretation of the CC&Rs with respect to STVRs; that no one at the meeting opposed his interpretation of the CC&Rs, and, in fact, there was "general agreement that short-term vacation rentals did *not* violate the CC&Rs"; and that he in response then informed other members of the Nob Hill HOA of his "intent to rent [his] unit as a short-term vacation rental."

Ferayorni also declared that no other Nob Hill owner, including Lastavich, ever complained about his use of his unit as a STVR, nor did any such owner assert that his doing so violated the CC&Rs; and that shortly after he began renting his Nob Hill unit on a short-term basis, defendant Cima "also began renting his unit as a [STVR]."

Lastavich at his deposition testified that he was in attendance at the 2005 HOA meeting when Ferayorni, joined by defendant Cima, announced their intention to rent their units for what Lastavich recalled would be about a "week" at a time. Lastavich further testified that Ferayorni began such rentals "[m]aybe the following spring"; and that the Cimas began using their unit for "[s]hort-term . . . vacation rentals" "shortly after" the 2005 HOA meeting.

5

As noted, Ferayorni in 2008 sold his Nob Hill unit to defendant Demis. Lastavich testified Demis then began to also use his unit "as a vacation rental." Lastavich further testified he knew Demis was using his newly acquired unit as a vacation rental from the "amount of traffic, people coming in and out" of the unit, and from a conversation they had had when Demis told Lastavich he bought the unit for "rental use."

Demis confirmed Lastavich's testimony. Demis declared under penalty of perjury that since his purchase of the unit in May 2008, he has "continually" used it as a "residential short term vacation rental property"; that once he began using his unit as a STVR, Demis has "never had a City code enforcement inquiry or violation for noise disturbances, trash, parking, or any other incident"; and that the "[p]olice have never been called for a problem at [his] rental."

Demis further declared that when he purchased his unit from the "previous homeowners[] association president [i.e., Ferayorni]," the "president already was renting his unit as a residential vacation rental and it was rented and booked through the VRBO.com website." In connection with his purchase, Demis was provided with "residential vacation income data that was a material basis for [his] decision to purchase the property." Demis also confirmed that since his purchase of the Nob Hill unit in 2008, he has had "several conversations with Mr. Lastavich," adding: "[Lastavich] at all times . . . knew that my unit (and at times both other units in the building besides his) were used as residential short-term vacation rentals."

Sandra Bovenzi declared under penalty of perjury that she sold her Nob Hill unit to Don Richardson and Debbie Richardson in October 2005.[3]

---

[3]    Neither Sandra Bovenzi nor the Richardsons are parties in this lawsuit.

Sandra further declared that earlier in 2005, she took issue with signs that defendant Cima and Ferayorni had each placed on the balcony of their respective units, advertising them as "short-term vacation rentals." Sandra took down the signs and defendant Cima in response brought up the sign-issue at a Nob Hill HOA meeting.

Sandra in her declaration added, "At [the] meeting, we discussed the short-term vacation rental sign placement, and the Board came to an agreement on where the signs were to be placed. At no time did any Board member express the opinion that the use of the units as short-term vacation rentals was in violation of the Nob Hill CC&Rs. All members of Nob Hill were present at the meeting (including Mr. Lastavich)."

Lastavich in his deposition testified that shortly after the Richardsons bought their unit, he was aware they were using it as a "vacation rental"; and that the Richardsons continued to use their unit as such for the next "four or five years," although Lastavich believed they did so "sparingly." Don Richardson declared under penalty of perjury that, although at the time of trial he and his wife were not renting their Nob Hill unit, in the past they had done so, a fact Lastavich was aware of as early as 2006. Don further declared he did not object to other owners using their units as "vacation rentals."

Lastavich thus admitted that beginning in the latter part of 2005 or early 2006, he knew that Ferayorni, defendant Cima, and the Richardsons were using their units as STVRs. Lastavich's knowledge of such was based not only on the fact that there was increased "traffic" at Nob Hill, but also on separate conversations he had had with each of these current and former owners regarding their use of the units as STVRs, as also confirmed by them by their sworn testimony.

In early November 2016, Lastavich's legal counsel sent the other Nob Hill owners a letter demanding they "cease and desist" using their units as STVRs, arguing such use was a "clear violation" of the CC&Rs. The NOB Hill board consulted various attorneys in response. At a November 10, 2016 HOA meeting where "all" unit owners were represented including Lastavich, the board advised its members that the attorneys it had consulted "were identical in their position that vacation rental use is part of the single-family residence use and that such use was permitted by the CC&Rs. Therefore a motion was passed and carried with a vote of three to zero with one abstention (Mr. Lastavich) that the Nob Hill HOA Board hire an attorney to represent the HOA and to write a reply to Mr. [Lastavich's] demand letter."

In May 2017, Lastavich filed his original complaint, alleging *nine* causes of action against the Nob Hill HOA, Cima, and Demis for breach of fiduciary duty, fraud, trespass, negligence, intentional and negligent infliction of emotional distress, violation of the CC&Rs, an accounting, and declaratory relief. In addition to general damages, Lastavich sought *punitive* damages from defendants, injunctive relief, and attorney fees and costs.

In early June 2017, Lastavich filed an ex parte application seeking a temporary restraining order to enjoin defendants "from using the NOB Hill Association for Short Term Vacation Rentals . . . as such use violates the [CC&Rs] which has and will cause irreparable injury before certain legal/contractual/factual issues in this lawsuit are adjudicated." Defendants opposed the request. The court ordered further briefing.

Lastavich's request for a restraining order was denied in late August. The court found Lastavich failed to establish both a reasonable probability of success on the merits of his claims and irreparable harm if the injunction was not granted. The court also found that, in balancing the hardships borne by

8

the parties, the "individual homeowners [would] suffer greater harm if the injunction [was] granted."

In response to a demurrer and motion to strike, Lastavich in September 2017 filed a first amended complaint (sometimes, FAC), omitting only his fraud cause of action, but again seeking both general and punitive damages from defendants among other relief. Defendants again demurred to, and moved to strike portions of, the FAC.

In December, Lastavich filed a motion seeking a judicial declaration that STVRs violated section 3.1 of the CC&Rs and requesting appointment of a receiver. That motion was denied in late February 2018. The court that same month also sustained in part the demurrer to the FAC, dismissing Lastavich's causes of action for trespass and intentional infliction of emotional distress, and granted defendants' motion to strike Lastavich's request for punitive damages.

In March 2018, Lastavich filed a motion for summary adjudication, which the court subsequently denied both on procedural and substantive grounds. Substantively, the court found that Lastavich "failed to meet his burden to prove that the CC&Rs prohibited use of the Nob Hill single-family residences as short term rentals."

As noted, at the August 28 bench trial the parties stipulated to waive witness testimony. The parties' stipulation further provided the court would decide the case based on the following: "(a) Evidence cited in parties' trial briefs and any attached exhibits; [¶] (b) Notice of Lodging Evidence, filed on August 29, 2018, including an index of the lodged documentary evidence (Tabs 1-7); and [¶] (c) Deposition Transcripts of Bill Cima and Louis Lastavich."

9

At the continued September 6 hearing, after indicating it had read the evidence based on the parties' stipulation, and, after hearing the lengthy argument of counsel, the court orally announced its decision. As relevant to the issues we consider on appeal, the court disagreed with Lastavich's interpretation of the CC&Rs, finding that "short term vacation rentals are not a business and that their use do[es] not violate the CC&Rs," including section 3.1; and that all of Lastavich's remaining causes of action were derivative of his declaratory relief cause of action.

Defendants subsequently filed a motion to recover $313,721 in attorney fees and $6,156.95 in costs. In support of their motion, defendants argued the award requested was necessary and reasonable and was incurred to "(i) defend against numerous, largely unsuccessful motions filed by Plaintiff [Lastavich], (ii) engage in discovery, and (iii) successfully prevail after the bench trial."

Lastavich opposed the fees motion, essentially rearguing the merits of the trial court's ruling on his declaratory relief cause of action; and noting that once such ruling was reversed on appeal, *he* would be seeking an award of fees and costs from defendants. In addition, Lastavich also argued the amount of fees sought by defendants was unreasonable, as his fees allegedly were "less than a third of the Defendants claimed fees."

The record shows the court on its own motion twice continued the hearing on the fees motion, wisely allowing the trial judge that had presided over the case and bench trial to hear and rule on said motion. At the continued February 1, 2019 hearing, the court granted the motion for attorney fees, but reduced the award to $260,625. Lastavich appealed this post-judgment order in connection with this main appeal.

10

## DISCUSSION

### A. *Guiding Principles*

The interpretation of a written instrument, such as the CC&Rs at issue here, is essentially a judicial function to be exercised according to the generally accepted canons of interpretation of contracts so that the purpose of the instrument may be given effect. (*Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 575 (*Seith*); *Greater Middleton Assn. v. Holmes Lumber Co.* (1990) 222 Cal.App.3d 980, 989.) When there is no conflict in the evidence as to the document in question, an appellate court is not bound by a trial court's interpretation of the terms of the written instrument, but should make an independent determination of the terms. (*Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1121 (*Ekstrom*).)

Key to the instant case, restrictive covenants such as the CC&Rs must be construed strictly against those seeking to enforce them, and in favor of the unencumbered use of the property. (See *Wing v. Forest Lawn Cemetery Assn.* (1940) 15 Cal.2d 472, 479 [recognizing "any provisions of an instrument creating or claimed to create a [restrictive easement] will be strictly construed, any doubt being resolved in favor of the free use of the land"]; *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1377 (*Chee*) [noting " ' "restrictive covenants are construed strictly against the person seeking to enforce them," ' " in favor of the unencumbered use of property]; *Smith v. North* (1966) 244 Cal.App.2d 245, 248 (*Smith*) [noting when a restrictive covenant is "subject to more than one interpretation, that construction consonant with the unencumbered use of the property will be adopted," and "any doubt therein is resolved against enforcement of the restriction"].)

11

Keeping these principles in mind, we nevertheless strive to give the instrument a just and fair interpretation, so that the intent of the parties— typically determined at the time when the instrument is formed, governs. (See *Westrec Marina Management, Inc. v. Arrowood Indemnity Co.* (2008) 163 Cal.App.4th 1387, 1392 (*Westrec*); Civ. Code,[4] § 1636 [providing: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful"].) "We ascertain that intention solely from the written contract, if possible." (*Westrec*, at p. 1392; § 1639 [providing in part: "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible"].)

However, "[r]estrictions on the use of land will not be read into a restrictive covenant by implication, but if the parties have expressed their intention to limit the use, that intention should be carried out, for the primary object in construing restrictive covenants, as in construing all contracts, should be to effectuate the legitimate desires of the covenanting parties." (*Hannula v. Hacienda Homes* (1949) 34 Cal.2d 442, 444–445.)

As noted, in this case the parties stipulated to the evidence the court could rely on in determining whether the CC&Rs as a whole, and section 3.1 in particular, prohibited the use of the Nob Hill units as STVRs. Because there was no conflict in the evidence regarding the interpretation of the CC&Rs, we independently determine their meaning. (See *Ekstrom, supra,* 168 Cal.App.4th at p. 1121; *Seith, supra,* 159 Cal.App.4th at p. 575.)

B. *Analysis*

As noted *ante,* Lastavich contends that the "plain meaning" of section 3.1 of the CC&Rs prohibits the use of the Nob Hill units as STVRs. For

---

4      All further statutory references are to the Civil Code.

12

purposes of this appeal only, we deem a STVR to mean a rental of less than 30 days, as Lastavich stated at his deposition, and as defined in Ordinance No. CS-272, section 5.60.020,[5] of the City Council of City.

Section 3.1 is found under the heading, "Use of Units and Common Area," and provides: "<u>Single-Family Residence Only.</u> Each Unit shall be used as a single family residence and for no other purpose or purposes except that a sales office and/or sales display area may be maintained by Developer in any of the units until sales of all of the Condominiums in the Project have been consummated."

Section 1.2 of the CC&Rs defines "[u]nit" to "mean and refer to those portions of the Condominium Property shown and described as such on the Condominium Plan and shall consist of a Living Area Airspace and Garage Airspace." The CC&Rs do not, however, define the term "used as a single family residence." Nor do they include the term "transient vacation lodgers," which term Lastavich relies on to distinguish section 3.1 and its requirement that the units be used only as a "single family residence."

---

[5] This section provides: " 'Short-term vacation rental' is defined as the rental of any legally permitted dwelling unit as that term is defined in Chapter 21.04, Section 21.04.120 of this code, or any portion of any legally permitted dwelling unit for occupancy for dwelling, lodging or sleeping purposes for a period of *less than 30 consecutive calendar days*. Short-term vacation rental includes any contract or agreement that initially defined the rental term to be greater than 30 consecutive days and which was subsequently amended, either orally or in writing to permit the occupant(s) of the owner's short-term vacation rental to surrender the subject dwelling unit before the expiration of the initial rental term that results in an actual rental term of less than 30 consecutive days." (Italics added.) We note that section 5.60.030 of Ordinance CS-272 provides: "Short-term vacation rentals which comply with the requirements of this Chapter are permitted only in the coastal zone," which, as noted *ante*, includes Nob Hill.

13

As is clear from the undisputed evidence summarized *ante*, Lastavich's interpretation of section 3.1 would severely limit the remaining Nob Hill owners' free use of their property. (See *Wing, supra*, 15 Cal.2d at p. 479; *Smith, supra*, 244 Cal.App.2d at p. 248; *Chee, supra*, 143 Cal.App.4th at p. 1377.) As such, we must strictly construe the CC&Rs against him.

Initially, we note that it would have been relatively simple to have included a single sentence in the CC&Rs, when originally drafted in 1986 or as amended, to limit the rental of the Nob Hill units to a certain minimum number of days. Such a sentence could have read something along the lines of, "no rental of any 'unit,' as that term is defined in section 1.2, shall be for a period of less than [fill in] days, which rental shall, in any event, be used only as a 'single family residence and for no other purpose,' as provided in section 3.1," or words to that effect.

Indeed, as is also clear from the undisputed evidence, it cannot be said the use of the Nob Hill units as vacation rentals was unexcepted or unanticipated. As noted, the complex is comprised of only four units; is located in the coastal zone of City, a beach resort; and most of the former and current owners of such units, other than Lastavich, have used their units as a STVR, dating back to 2005.

In addition, Sandra Bovenzi's sworn testimony shows she had no intention of limiting the rental of the Nob Hill units to a minimum number of days. As noted, she along with Arthur Bovenzi were identified as the "Declarant" in the CC&Rs when they were recorded in 1986. As such, her testimony is relevant to our interpretation of the CC&Rs. (See *Westrec, supra*, 163 Cal.App.4th at p. 1392; see also § 1647 [providing: "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates"].)

14

On the issue of whether Bovenzi intended to restrict STVRs at Nob Hill or to otherwise limit the rental of such units to a certain minimum number of days, she testified: "I had no intent to prohibit the use of the Nob Hill condominium units as short-term vacation rentals. Further, I had no intent to restrict or prohibit any rental use of such units. I formulated my intent prior to or at the time the CC&Rs were completed, and my intent is reflected in the various provisions of the CC&Rs." She went on to identify sections 3.1, 3.8, 3.11, and 4.8, all of which are summarized *post*, as indicative of her intent as a "Declarant."

Moreover, as we have repeatedly noted, the undisputed record evidence stipulated to by the parties shows that various owners since at least 2005 have used their units as a STVR; that in 2005, defendant Cima and Ferayorni began advertising their respective units as STVRs by posting signs on their units' respective balconies; that shortly after they purchased their unit from Sandra Bovenzi in 2005, the Richardsons also used their unit as a "vacation rental"; and that Demis in 2008 bought his unit from Ferayorni specifically for use as a rental, including as a STVR. (See *City of Hope Nat. Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393 (*Genentech*) [noting that a "party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean," and further noting that for "this reason, evidence of such conduct . . . is admissible to resolve ambiguities in the contract's language"].)

But that's not all. The undisputed evidence also shows that at a Nob Hill HOA meeting in 2005 attended by Lastavich, defendant Cima and Ferayorni both expressed their intention to use their units as STVRs; that the owners discussed whether such use was prohibited by the CC&Rs; and

15

that there was general agreement among the owners that no such prohibition existed. The undisputed evidence further shows that, shortly after this meeting, Ferayorni began using his unit as STVR; and that defendant Cima and his wife Debbie Cima not long afterwards also began using their unit as a STVR, and have *continuously* done so for almost 13 *years*, up to the time of trial. (See *Genentech*, *supra*, 43 Cal.4th at p. 393.)

Furthermore, multiple sections of the CC&Rs expressly contemplate the Nob Hill units can be rented and/or leased by nonowners *without* regard to any minimum number of days or time period. (See *Ezer v. Fuchsloch* (1979) 99 Cal.App.3d 849, 861 [concluding a declaration of restrictions is to "be 'construed as a whole' so as 'to give effect to every part thereof [citations], and particular words or clauses must be subordinated to general intent' "]; see also § 1641 [providing: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].)

The opening section of the CC&Rs in part provides the "Declarant" (i.e., Albert Bovenzi and Sandra Bovenzi) pronounce that the "Project, and every component thereof, shall be held, used, sold, conveyed, *leased*, and encumbered subject to the following assessments, restrictions, covenants and conditions." (Italics added.) There is no language in this prefatory section limiting the "leas[ing]" of units to a certain minimum number of days.

Section 3.6 of the CC&Rs addresses use of the Nob Hill common area. It provides in part such area, excluding buildings, may be used for "recreational use by the Condominium Owners[6] and *occupants* of the Units

---

6    "Owner" is defined in section 1.6 of the CC&Rs in part to mean the "owner of record of fee simple title to any condominium or, in the event a condominium has been sold under a real property sales agreement."

16

and their *guests*, subject to rules and regulations established" by the Nob Hill HOA.  (Italics added.)  Thus, section 3.6 expressly distinguishes "[o]wners" from "occupants" and "their guests"; does not define the term "occupant" or "guest"; and similar to the opening section of the CC&Rs and section 3.1, it contains no express limitation on the minimum number of days a unit may be rented by an "occupant" and his or her "guest."

Section 3.8 provides additional support for a construction of the CC&Rs allowing a Nob Hill unit to be rented and/or leased by nonowners *without* regard to the duration of such.  It provides:  "Sign Limitations.  No Condominium Owner shall place any sign (for *rent*, sale, or exchange) on the interior walls of his Units, except where such sign is of reasonable dimensions, as determined by the City of Carlsbad" and California law.  (Italics added.)  Again, if the "rent[al]" of a Nob Hill unit was prohibited for less than 30 days, as Lastavich argues, it would have been simple to include such language in this section.

Section 3.11 also distinguishes between an "Owner" and an "*occupant* of such Owner's unit" when addressing liability for damages to common areas or any improvements thereof.  (Italics added.)  As is the case with other sections in the CC&Rs, "occupant" is undefined and occupancy is not restricted to a certain minimum stay.

Section 4.8, governs the rights of the Nob Hill HOA to adopt reasonable rules consistent with the CC&Rs "relating to the use of the Common Area by Owners and their *tenants or guests*, and the conduct of such persons with respect to automobile parking, outside storage of boats, trailers, bicycles and other objects, . . . and other activities which, if not so regulated, might detract from the appearance of the Project or offend or cause inconvenience or danger to persons residing or visiting therein."  (Italics added.)

17

As is the case with other provisions in the CC&Rs, section 4.8 makes a clear distinction between owners, on the one hand, and "tenants" and "guests" on the other hand, again without defining "tenants" or "guests." As is also the case with respect to sections 3.1, 3.6, 3.8, and 3.11, section 4.8 does not include any language excluding tenancy to less than 30 days.

In sum, based on the rules of construction we must apply to Lastavich's interpretation of the CC&Rs, including strictly construing them against him in favor of the free use of property; the lack of any express, unambiguous prohibition in the CC&Rs of the use of the Nob Hill units as STVRs, despite references in various sections to nonowners such as renters, occupants, and guests; the undisputed evidence provided by (i) Sandra regarding her intent as a Declarant under the CC&Rs not to limit the rental of units to a minimum stay or to preclude STVRs, and (ii) present and former owners regarding their use of the Nob Hill units as STVRs since about 2005, all of which was known to Lastavich; we independently conclude the CC&Rs do not expressly or by implication prohibit the use of the Nob Hill units as STVRs.

Based on our decision, we find it unnecessary to reach the myriad other arguments raised by the parties on appeal, including that even if the CC&Rs prohibited STVRs, such a prohibition would be unenforceable under the California Costal Act of 1976 (Pub. Resources Code, § 30000 et seq.) and public policy underlying its enactment, as discussed in *Greenfield v. Mandalay Shores Community Assn.* (2018) 21 Cal.App.5th 896; or that Lastavich's actions, or, more appropriately, inaction, prevent the relief he seeks under the doctrine of laches.

Finally, as a result of our decision affirming the judgment, we decline to reverse the award of attorney fees to defendants. We note on appeal

18

Lastavich did not challenge the amount of such an award *"per se,"* but claimed such an award could not stand if the judgment was reversed.

## DISPOSITION

The judgment is affirmed, as is the postjudgment award of attorney fees.  Defendants to recover their costs of appeal.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

19